98  203
99  372
99  375
98  203
s104  61

Lewis, Respondent, vs. The American Savings & Loan Association and others, Respondents, and Hale, Receiver, Appellant.

*December 11, 1897 — January 11, 1898.*

*Foreign building and loan associations: Deposit of securities with state treasurer: Ultra vires: Application of proceeds after insolvency: Receivers: Constitutional law: Waiver.*

1. The directors of a foreign building and loan association constituted the state treasurer a depository "for the purpose of temporary convenience in complying with the laws of Wisconsin in regard to the deposit of securities," and resolved to "comply with the Wisconsin law as soon as possible." Shortly thereafter officers of the association deposited with said treasurer over $100,000 of its securities, and the association received a license to do business in this state. Secs. 2014a, 2014b, S. & B. Ann. Stats., under which the deposit was made, provided that said treasurer should hold the securities so deposited in trust until all shares held by residents of this state had been fully redeemed, and until the contracts and obligations of the association to persons and members residing in this state had been fully performed and discharged. When the first deposit was made the articles of incorporation of the association authorized the directors to dispose of its mortgages as provided by the by-laws, but no by-law on that subject had been passed. Within a few months the articles were amended so as to prohibit the association from disposing of its mortgages. Said articles also provided that the directors might enter into such contracts and agreements and appoint such agents as they may deem for the best interest of its affairs. The statutes of its domicile authorized such associations to deposit their securities in other states for the purpose of obtaining permission to enter and do business therein, and contained provisions regulating such transfers, apparently designed to facilitate the convenient using and tracing of the securities deposited for that purpose. The deposits were changed or renewed from time to time as occasion required, and a new license granted from year to year. The association became insolvent, and a receiver was appointed for it in the state of its domicile. Thereafter plaintiff, a resident shareholder, procured the appointment of a receiver in this state for the purpose of sequestrating the securities deposited with the state treasurer and

Lewis vs. The American Savings & Loan Association and others.

distributing the proceeds among resident shareholders. To this action the first-mentioned receiver was made a party, and he appeared and claimed the securities. *Held:*

(1) That the securities would be presumed to have been deposited in a *bona fide* attempt on the part of the association to comply with the laws of this state.

(2) That the failure of the association to comply with the statutory provisions of the state of its domicile in making such deposit did not render the transfer void, compliance with such provisions having been intended as a matter of local administration merely, and not as a condition precedent to the right to make it.

(3) That such deposit was within the lawful power of the association as represented by its directors, and the action of the directors in making it was binding upon the association and all its members, to the extent and according to the terms of the statute under which it was made.

(4) That the receiver appointed in this state was entitled to retain and sell or collect the securities, and apply the proceeds to the redemption in full of all shares held by residents of this state and to the performance and discharge of all the association's contracts and obligations to members and persons residing herein, the residue if any to be turned over to the foreign receiver.

(5) That the corporation and its stockholders had waived the right to question the validity of the trust, or the constitutionality of secs. 2014*a*, 2014*b*, S. & B. Ann. Stats., on the ground that they impaired the obligation of contracts, even though in case of insolvency a preference was thereby secured to resident shareholders.

2. The legislature has power to pass laws for the protection of its citizens against irresponsible foreign corporations by requiring them, as a condition precedent to transacting business in this state, to deposit securities in trust for the redemption of their obligations to persons residing herein.

APPEALS from orders of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

The American Building & Loan Association was incorporated and organized April 15, 1887, under and by virtue of the laws of Minnesota, as a building and loan association, having its principal office and place of business at Minneapolis, Minnesota; and it continued to transact its corporate business there until 1893, when its corporate name was

changed to that of the *American Savings & Loan Association.* The general nature of its business was declared to be "to assist its members in saving and investing money, and in buying and improving real estate, and in procuring money for other purposes, by loaning or advancing under the mutual building society plan, to such of them as might desire to anticipate the ultimate value of their shares, funds accumulated from the monthly contribution of its stockholders, and also such other funds as may from time to time come into its hands." The government of the corporation and the management of its affairs was vested in a board of seven directors, elected by the stockholders. Membership was acquired by taking stock in the company and paying the prescribed admission fee. The directors were authorized "to enter into such contracts and agreements, and appoint such agents for its business management, as they may deem for the best interest of its affairs;" and the directors "might sell and dispose of the mortgages held by the corporation whenever they might deem best, and *as provided by the by-laws.*" No by-laws were ever passed on this subject. July 11, 1889, the articles of incorporation were amended so as to provide that "the board of directors shall not sell or dispose of any of the mortgages held or owned by this corporation."

The principal question presented by the appeals is as to the construction, validity, and effect of the law of Wisconsin requiring foreign mutual building and loan associations to make a deposit of securities of the value of $100,000 with the state treasurer of Wisconsin as a condition upon which such corporations might receive a license from and do business in the state. The statute (S. & B. Ann. Stats. secs. 2014*a*, 2014*b*) provides that "no foreign building and loan association . . . shall issue its shares, receive moneys or transact any business in this state unless such association shall have and keep on deposit with the state treasurer of Wisconsin, in trust, for the benefit and security of all its members

in this state, the securities of the actual cash value of $100,000 of the kind mentioned in section 2 of this act; to be approved and accepted by said state treasurer, and held in trust as aforesaid, until all shares of such association held by residents of this state shall have been fully redeemed and paid off by such association, and until its contracts and obligations to persons and members residing in this state shall have been fully performed and discharged." And it was provided that "if any securities on deposit, as provided in this act, are wholly or partially extinguished by payments on the same or otherwise, or such securities depreciate in value for any cause, new securities must be added, so that the deposit may at all times be kept good and of the value of $100,000."

The defendant association was doing business in this state from the time of the passage of the above act, having 246 members in Wisconsin, 162 of whom became such prior to the date on which the law went into force, to wit, April 19, 1889. The plaintiff, *Lewis*, a resident of Wisconsin, the holder of five shares of stock, upon which $243 had been paid, alleging that there are a large number of residents and citizens of the state of Wisconsin legal members, owning and holding stock, in the defendant association, whose names he was unable to get, or their post-office address, charged that the defendant association was insolvent; that a large part of its assets had been improvidently invested and squandered, and that, on the application of a creditor or creditors thereof residing in Minnesota, *William D. Hale,* the appellant, had been appointed receiver of all the property of the defendant association by the courts of Minnesota, in proceedings initiated therein; that, under the laws of Wisconsin, the defendant was entitled to withdraw all the securities deposited with the state treasurer, and substitute other and similar securities therefor, and that, during the year then passed, the defendant association had withdrawn a large portion of the securities theretofore duly

deposited with the state treasurer of Wisconsin, and sub-
stituted in their stead other securities; that such securities
so deposited consist in large part of mortgages upon real
estate, which are likely to depreciate in value unless enforced
according to law, and that the only property of said asso-
ciation in Wisconsin was the securities aforesaid, from which,
if not preserved and properly cared for and converted into
cash, it would be impossible for resident members of said
association to recover back moneys paid into said associa-
tion; that it was necessary for the protection of the rights
of the plaintiff, and of the members and stockholders in said
defendant association resident in the state of Wisconsin, that
a receiver for the defendant association in Wisconsin should
be appointed, in order to ascertain all of the members and
stockholders in said association residing in Wisconsin and the
amount of their respective claims, and to convert into money
the securities so deposited for their protection, and distribute
the same to such persons as may be entitled thereto, under
the direction and supervision of the court; and an injunction
was sought restraining the defendant *Peterson,* as state
treasurer, from in any manner parting with the custody and
control of said securities, or permitting any withdrawal or
substitution of the same.   Judgment was prayed that said
securities so held be sequestrated and distributed among the
members and stockholders of said association who are resi-
dents of the state of Wisconsin, including the plaintiff, ac-
cording to law; that a receiver or receivers, to take charge
thereof and convert the same into money, with the usual
powers and authority, be appointed.   An injunction restrain-
ing and enjoining all persons from proceeding in any man-
ner or way to obtain a lien on said securities, and from in
any manner interfering with or intermeddling with the
same, was prayed for; and that the court direct notice to
be given, as it might deem proper, requiring all members
and stockholders of said association who are residents of the

state of Wisconsin to submit their claims and become parties to the action, within such reasonable time as might be fixed by the court; and for such other and further relief, etc.

In addition to these facts, it appeared from the pleadings that some time prior to May 10, 1889, the defendant association deposited with the state treasurer of the state of Wisconsin, in trust for the benefit and security of all its members in that state, securities consisting of mortgages taken by it in the course of its business, to the actual cash value of $100,000, which were duly approved and accepted by such treasurer, and which had since been held in trust by him and his successors in office, under the laws of this state relating to foreign building and loan associations, by which the state treasurers are required to hold such securities until all shares of stock in said association shall have been fully redeemed and paid off by the defendant association, and until all contracts and obligations of the defendant association to members and persons residing in the state of Wisconsin shall have been fully performed and discharged; that the defendant *Peterson*, as such state treasurer, holds said securities in his custody under said trust to the face value of $113,891.80.

The appellant, *William D. Hale*, who had been appointed by the district court of Hennepin county receiver for said association, petitioned the court to be made a defendant in the action in the circuit court for Dane county; and it was ordered accordingly, and he interposed an answer and counterclaim, in which he admitted that the association was duly licensed by the state of Wisconsin to do business in said state in the year 1889, which said license was continued from time to time thereafter until the 1st day of January, 1894. The plaintiff and the defendant *S. A. Peterson*, as treasurer, etc., and *M. C. Clarke*, the receiver appointed by the circuit court for Dane county, Wisconsin, demurred to said answer and

Lewis vs. The American Savings & Loan Association and others.

counterclaim. Orders were entered sustaining the demurrers, from which the defendant *William D. Hale*, the receiver appointed by the Minnesota court, appealed.

The board of directors of the defendant association passed a resolution May 1, 1889, as follows: "Resolved, that the state treasurer of Wisconsin be made a depository of the association for temporary convenience in complying with the law of Wisconsin in regard to the deposit of securities, $100,000. Also, resolved, that the association comply with the Wisconsin law as soon as possible."

The counterclaim alleged:

(1) That the mortgages belonging to the *American Savings & Loan Association* in the possession of *S. A. Peterson*, state treasurer, at the time of making and filing plaintiff's complaint aggregated in value the sum of $145,234. That prior to the 11th of July, 1889, there was delivered to said *Peterson*, as such treasurer, mortgages of said association aggregating in value the sum of $103,060, of which there remained in his hands at the time of making and filing the plaintiff's complaint, as a part of the mortgages first above stated, mortgages aggregating in value the sum of $20,784; and between July 11, 1889, and the 1st of January, 1894, there were, of the mortgages above stated as in the possession of said state treasurer at the time of making and filing the complaint, delivered to him, at various times, mortgages aggregating $80,850; and after January 1, 1894, there was delivered to him the remainder of said mortgages, which were in his possession at the time of the making and filing of said complaint, aggregating in value the sum of $43,600. That, of the mortgages delivered to him subsequent to the 11th day of July, 1889, a large part thereof were delivered to him in lieu of mortgages in his possession prior to said date, which had been by him surrendered to said association, and the remainder thereof were delivered to him as an addition to those delivered prior to that date.

(2) That all of said mortgages are regular building and loan association mortgages, made and executed by shareholders and members of said association to secure the payment by said members of their regular instalments of dues upon their stock, upon which said stock they had been granted an advancement or loan, and to secure the payment of the amount of such loan, and that they were non-negotiable, and could not be transferred by said association.

(3) That, being a mutual building and loan association, it had no power or authority at any time to pledge, transfer, assign, sell, or dispose of any of its mortgages; and that none of said mortgages were deposited with said state treasurer by said association, but were given and delivered to him by officers and employees of said association, who were not authorized by said association to so deliver the same; and that they kept in the books of said association a statement or account of said mortgages so delivered to said treasurer.

(4) That said mortgages, and each of them, held by the state treasurer at the time of making and filing the complaint, *were held by him wrongfully, and without right or authority of law for said possession;* that the shareholders had no knowledge whatever of the delivery of said mortgages, nor did they at any time consent thereto or acquiesce therein; that the only action ever taken by said association relative to making a deposit with the state treasurer of Wisconsin was taken by its board of directors on the 1st of May, 1889, at a call meeting of said board, as hereinbefore stated. That the entire number of shareholders residing in Wisconsin when the action was commenced was 246, 162 of which had become such prior to the time when the Wisconsin statute took effect.

(5) That the Wisconsin shareholders, on becoming members, etc., subscribed for their shares of stock in the same manner, and received like certificates therefor, as did all the other shareholders of said association, wheresoever residing;

and that said association was a mutual corporation; and that each shareholder therein, including the plaintiff and " all the other shareholders in Wisconsin, enjoyed and were subject to like rights, privileges, immunities, and liabilities " that other members enjoyed.

(6) That, under its articles of incorporation, none of the shareholders of the association did or could have higher or superior rights than those enjoyed by all; that, at the date of appellant's appointment, it had shareholders in thirty-five states, owned real estate in nineteen states, and held mortgages on real estate in twenty-nine states.

(7) That the association had violated certain laws of the state of Minnesota, had become insolvent, and incapable of effectuating the object for which it was organized and created, and incapable of carrying out its contracts and obligations; that the appellant, *William D. Hale,* was duly appointed, pursuant to the statutes of Minnesota as fully set forth, by the district court of Hennepin county, general receiver of such association, in an action wherein the state of Minnesota, on the relation of its attorney general, was plaintiff, and said association was defendant; and that the order appointing him required him to take charge of all the property and effects of such association, to collect, sue for, and recover all debts, dues, and demands that were due said association, and to manage and administer all the affairs of said association under the direction of said court. That, pursuant to said order and appointment, the said association executed and delivered to the receiver, *William D. Hale,* deeds of all the real estate owned by it, and due and sufficient assignments of all its property, including said mortgages herein referred to as being in the possession of said *Peterson,* as treasurer of the state of Wisconsin, on the 14th day of January, 1896.

(8) That *M. C. Clarke,* on the 5th of February, 1896, was, by the order of the circuit court of Wisconsin for Dane

county, appointed receiver of said association for the state
of Wisconsin; and the defendant *S. A. Peterson*, state treas-
urer, was ordered and directed to turn over all the said
mortgages referred to in the plaintiff's complaint, and speci-
fied in the answer and counterclaim, to said *Clarke*, as such
receiver; and that the said *Peterson* had turned over and
delivered the same accordingly; and that said *Clarke* was
proceeding to collect the same, and would, unless interfered
with by the court, distribute the proceeds of the same to the
shareholders resident in Wisconsin, thereby giving to said
Wisconsin shareholders a preference over the other share-
holders of said association.

(9) That the assets of the association are not sufficient to
pay to all its shareholders dollar for dollar of the amount
which they had paid in or any other or greater sum than
forty per cent. thereof; that if said *Clarke*, acting as re-
ceiver, should collect said moneys, and distribute the pro-
ceeds thereof to the Wisconsin shareholders, they would
receive dollar for dollar of the amount they paid in to said
association, and thereby be constituted a preferred class of
shareholders, against equity and good conscience, and con-
trary to the purposes of said association as defined by its
articles of incorporation, by-laws, and contracts for member-
ship with its shareholders; and, finally, that the law under
which it is alleged said mortgages were deposited was in-
tended to protect said Wisconsin shareholders in all their
rights growing out of their membership in said association,
and not for the purpose of extending, altering, or changing
said rights; that the purpose for which any deposit, made
by said association with the said state treasurer under said
law, was made terminated and was at an end when said as-
sociation became insolvent and incapable of carrying out its
contracts and effectuating the purposes of its being.

The defendant prayed that the court might, by its decree,
direct said *Clarke*, as such receiver, to turn over and deliver

said mortgages so held by him to said *William D. Hale*, to be by him collected, and the proceeds equitably distributed to all the shareholders, wherever residing, and for general relief.

*Eugene G. Hay*, for the appellant, contended, *inter alia*, that absolute mutuality of interest is the foundation of all building and loan associations. Every shareholder maintains a contractual relation with the association, which, in the nature of things, is a contractual relation with every other shareholder. The certificate of stock which he received was the written evidence of that contract. Each shareholder, upon becoming a member of the association, agreed with each other shareholder that he would share with him equally the losses of the common enterprise. Each shareholder, upon accepting his certificate of stock, agreed that he would be a mutual participant in the fortunes of the association, whether they were good or bad. *Towle v. Am. B., L. & I. Co.* 60 Fed. Rep. 131; *Strohen v. Franklin S. F. & L. Asso.* 115 Pa. St. 273; *Security Loan Asso. v. Lake*, 69 Ala. 456, 461; *Knutson v. N. W. L. & B. Asso.* 69 N. W. Rep. 889; *Eversmann v. Schmitt*, 53 Ohio St. 174; *Price v. Kendall*, 14 Tex. Civ. App. 26; *Rogers v. Raines*, 38 S. W. Rep. 483; *Taylor v. Life Asso. of Am.* 13 Fed. Rep. 493; *Towle v. Am. B. & L. Asso.* 75 id. 938; Endlich, Building Associations (2d ed.), §§ 121–123, 514, 523, 524, *et seq.* Sec. 2014*a*, S. & B. Ann. Stats., is intended to insure to Wisconsin shareholders their contractual rights, not to change or enlarge them. Under his contract with the association the Wisconsin shareholder was to be treated just as the shareholder in any other state. He was to receive his proportionate share of the assets, no more, no less. If this law is interpreted as giving him a larger share of the assets of the association when it becomes insolvent, it operates to enlarge his rights, changes his contract, and impairs its obligations. · *Taylor v. Life Asso. of Am.* 13 Fed. Rep. 493; *Run-*

*del v. Life Asso. of Am.* 10 id. 720; *Davis v. Life Asso. of Am.* 11 id. 782; *Parsons v. Charter Oak L. Ins. Co.* 31 id. 305; *Relfe v. Rundle,* 103 U. S. 222; *Bockover v. Life Asso. of Am.* 77 Va. 85; Reno, Non Residents, § 164. The proper construction of this law is that the deposit of the mortgages with the state treasurer was made only to enable the Wisconsin shareholders to enforce such rights as they might have in the association growing out of their contractual relation. The insolvency of the association and the appointment of the receiver abrogated these contracts; hence, the purpose for which the deposit was made is at an end, and the mortgages should be turned over to the domiciliary receiver and distributed equitably among all the shareholders. Any other construction would defeat the very purpose of that principle of equity which authorizes a court to take charge of an insolvent estate. *Towle v. Am. B. & L. Asso.* 75 Fed. Rep. 938; *Pittsburg & S. R. Co. v. Allegheny Co.* 79 Pa. St. 214; *Wright v. Lee,* 2 S. Dak. 596; *S. C.* 4 id. 237; *Dearborn Foundry Co. v. Augustine,* 5 Wash. 67; *Washburn Mill Co. v. Bartlett,* 3 N. Dak. 138; *Toledo T. & L. Co. v. Thomas,* 33 W. Va. 566; *American B. & L. Asso. v. Rainbolt,* 48 Neb. 434; Morawetz, Priv. Corp. (2d ed.), § 665; *Rogers v. Hargo,* 92 Tenn. 35. Sec. 2014a impairs the obligations of contracts. The Minnesota law under which the association was organized authorized the deposit of securities in a foreign state when required by the laws of such state. In the same law such associations were forbidden to issue or create preferred stock. The legislature could not have intended to authorize the association to make a deposit which would create preferred stock, and at the same time and in the same act forbid it to create preferred stock. It is clear, therefore, that the interpretation placed upon the Wisconsin statute was that contended for by appellant. Otherwise the Minnesota law was itself in conflict with the constitution, in that it authorized a corporation of its creation to do

that which violates its contracts and renders it impossible for it to fulfill the purpose of its creation by destroying the mutual relation of its shareholders, which is the essence of its being. *Fletcher v. Peck,* 6 Cranch, 87; *Sturges v. Crowninshield,* 4 Wheat. 122; *Dartmouth College v. Woodward,* id. 518; *Green v. Biddle,* 8 Wheat. 1; *Ogden v. Saunders,* 12 id. 213; *Bronson v. Kinzie,* 1 How. 311; *Van Hoffman v. Quincy,* 4 Wall. 535; *Fisher v. Patton,* 134 Mo. 32; Cooley, Const. Lim. (5th ed.), 331 *et seq.; Relfe v. Rundle,* 103 U. S. 222; *Canada S. R. Co. v. Gebhard,* 109 id. 527.

For the respondents there was a brief by *Lewis, Briggs & Dudgeon,* attorneys for *Clarke,* and the *Attorney General,* attorney for *Peterson,* and oral argument by *H. E. Briggs* and *J. L. Erdall,* first assistant attorney general. They argued, among other things, that the association and its receiver are estopped from questioning the validity of the deposit. *Berry v. Knights Templars' & M. L. I. Co.* 46 Fed. Rep. 439, and cases cited; *Diamond Plate Glass Co. v. Minneapolis Mut. F. Ins. Co.* 55 id. 27; *Railroad Co. v. Harris,* 12 Wall. 65; *Van Dresser v. Oregon R. & N. Co.* 48 Fed. Rep. 202; *Lafayette Ins. Co. v. French,* 18 How. 404; *Ehrman v. Teutonia Ins. Co.* 1 Fed. Rep. 471; *Gibson v. Manufacturers' F. & M. Ins. Co.* 144 Mass. 81; *Sparks v. Nat. M. Acc. Asso.* 100 Iowa, 458; Murfree, Foreign Corp. § 203; *Kadish v. Garden City Eq. L. & B. Asso.* 151 Ill. 531; *Whitney Arms Co. v. Barlow,* 63 N. Y. 62; 27 Am. & Eng. Ency. of Law, 360, 364, 367, and cases cited; *North Hudson Mut. B. & L. Asso. v. First Nat. Bank,* 79 Wis. 31; *Hall Mfg. Co. v. Am. R. Supply Co.* 48 Mich. 331; *Pneumatic Gas Co. v. Berry,* 113 U. S. 322; Morawetz, Priv. Corp. §§ 648–653, 689–699; *Manchester & L. R. Co. v. C. R. Co.* 66 N. H. 100.

PINNEY, J. 1. The principal question presented by these appeals is as to the construction, validity, and effect of the law

of Wisconsin requiring foreign mutual building and loan associations to make a deposit of securities of the value of $100,000 with the state treasurer as a condition upon which such corporations may receive a license from and transact business in this state.   The statute (secs. 2014$a$, 2014$b$, S. & B. Ann. Stats.) provides that "no foreign building and loan association  .  .  .  shall issue its shares, receive moneys or transact any business in this state unless such association shall have and keep on deposit with the state treasurer of Wisconsin, in trust, for the benefit and security of all its members *in this state*, the securities of the actual cash value of $100,000 of the kind mentioned in section 2 of this act; to be approved and accepted by said state treasurer, and held in trust as aforesaid, until all shares of such association held by residents of this state shall have been fully redeemed and paid off by such association, and until its contracts and obligations to persons and members residing in this state shall have been fully performed and discharged." The deposit is required at all times to be kept good and of the value of $100,000.   The defendant corporation, in order to be allowed to enter the state and transact its proper business as a building and loan association therein, and to obtain a license to that end, as it did May 10, 1889 (which was renewed from time to time, and continued in force during the entire period it transacted business in said state), deposited with the state treasurer of Wisconsin, as it appears, its mortgage securities taken in the course of its business, to the required amount.

The defendant corporation was a foreign corporation, created and existing under the laws of the state of Minnesota, located and having its principal office in Minneapolis. The general nature of its business was "to assist its members in saving and investing money, in buying real estate, and in procuring money for other purposes, by loaning or advancing under the mutual building society plan."   By ar-

ticle 6 of its articles of association, the government of th.'
corporation and the management of its affairs were vested
in a board of seven directors, chosen from and by the stock-
holders.   By its amended articles of association, adopted
July 31, 1888 (article 19), it was provided that "the board
of directors may sell and dispose of the mortgages held by
this corporation whenever they may deem best, and as pro-
vided by the by-laws;" but no by-laws on the subject were
adopted.   Article 16 of the same date provided that "the
directors of this corporation may enter into such contracts
and agreements and appoint such agents as they may deem
for the interest best of its affairs."   Article 19 was amended
July 11, 1888, so as to read as follows: "The board of di-
rectors shall not sell or dispose of any of the mortgages
owned by this corporation."

The Minnesota statute (chapter 236 of the General Laws
for 1889, which became a law April 22d of that year, before
the defendant corporation was licensed to do business in
Wisconsin, as amended June 1, 1891, and embodied in Gen.
Stats. of Minn. 1894, sec. 2860) provided, in substance, that
every building and loan association governed by the act
should deposit and keep with the state auditor or a trust
company all mortgages or other securities received by it in
the usual course of business, and that, whenever required by
the laws of any other state, territory, or nation, its securi-
ties sufficient to allow such association to enter and do busi-
ness in such state, territory, or nation might be deposited
with some officer authorized to receive the same in such
state, territory, or nation, under the laws thereof, for the
benefit of its members and creditors.   Provisions were made
regulating the transfer accordingly, which are so extended
as not to admit of convenient quotation; but they seem to
plainly recognize as lawful a deposit in another state of se-
curities of the association, in order to entitle it to a license
to enter such state and transact its business therein.   Suffice

it to say that the provisions of the Minnesota statute seem designed to facilitate the convenient using and tracing of its securities deposited for the purpose indicated, and its provisions appear to be in the main directory. Compliance with it appears to be a matter of local administration, and not a condition precedent to the right to use and deposit its securities for the purpose of entering and transacting business in such other state.

Within twenty days after the enactment of the Wisconsin statute, the corporation had constituted the state treasurer of Wisconsin " a depository for temporary convenience in complying with the laws of Wisconsin in regard to deposit of securities, $100,000," and resolved that it would " comply with the Wisconsin law as soon as possible." A license was issued to it pursuant to the statute, and it was renewed or continued in force until January 1, 1894.

2. In view of the action of the defendant through its board of directors, and the fact that it is conceded that the securities of the kind and character mentioned were held by the state treasurer of Wisconsin when the action was commenced to the amount of $145,234, we must conclude and hold that the mortgages in dispute were deposited with the state treasurer by the defendant corporation, or by its authority, in a *bona fide* attempt " to comply with Wisconsin law," as it had already resolved to do and it had made the state treasurer of that state its depository for that purpose. The Wisconsin law required the deposit of securities under the act to be made with the state treasurer. The defendant corporation obtained the prescribed license. It was required and it was its duty to deposit the securities mentioned to the amount of $100,000. This, it would seem, had been agreed should be done; and, upon the facts disclosed by the record, we think that it is a reasonable presumption that what was agreed to be done was done in the manner and for the purposes prescribed by the act. In *Sparks v. Nat. M. Acc.*

*Asso.* (Iowa), 69 N. W. Rep. 678, it was held that when a foreign insurance company is shown to have transacted business in a state where, by the statute, certain acts were to be done by that company before it had a right to transact business therein, a conclusive presumption arises that the company has complied with the law in that respect. It is alleged in the counterclaim, in substance, that the provisions of the Minnesota statute were not complied with by the corporation defendant in making the deposits with the state treasurer of Wisconsin. The state authorities of Wisconsin, in receiving these securities as provided by the statute, were not bound to investigate the question of local administration or compliance with the law of Minnesota by the corporation and state authorities. The allegations that the possession of the securities by the state treasurer was wrongful, and that they were delivered to him by officers and employees of the corporation without lawful authority, are legal conclusions. It was enough that the securities were, as it is conceded, the property of the corporation; and that its directors, who deposited them for the purpose indicated, had power "to enter into such contracts and agreements as they might deem for the best interest of its affairs;" and that the directors, in the exercise of their discretion, desired to obtain a license to prosecute and carry on the business of the corporation in Wisconsin in order to realize the profits and advantages consequent upon such extension of its business, which it appears has been extended to thirty-four states. *Heath v. Silverthorn L. M. & S. Co.* 39 Wis. 146.

3. It was within the power of the directors to determine upon and make the intended extension of the business of the corporation; and it was their duty and within their power as well to make the necessary deposit of its securities as required by the Wisconsin law, which was a condition precedent to the right of the corporation to obtain the desired license and transact its business in Wisconsin. In any view

that may be taken of the case, we think that the transaction was within the undoubted power of the corporation. The deposit was made accordingly. The license was issued. The defendant entered the state, and carried on its business therein, and for a period of five years derived the benefits and advantages expected to result from such extension of its business, and the protection and authority of the state. It was well understood by the corporation, its directors, officers, and members, that these securities had been deposited, and had so remained, with the state treasurer, under the pledge specified in the Wisconsin statute, and until financial disaster and insolvency overtook the corporation. It could enter the state of Wisconsin, and carry on its business, only on complying with the terms and conditions of the Wisconsin statute. Having the right to extend its business, it seems clear that it was not *ultra vires* the corporation to comply with the conditions upon which alone it could lawfully obtain a license to so enter the state and carry on its business, the prosecution of which was for the common advantage and profit of the corporation and of all its members and shareholders.

4. It is familiar law that the recognition of the existence of a corporation by any other than the state of its creation, and the enforcement of its contracts made therein, depend purely upon the comity of such other state or states,— "a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy." "Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, *that such assent may be granted upon such terms and conditions* as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities; or *they may exact such security*

*for the performance of its contracts with their citizens as in
their judgment will best promote the public interest.* The
whole matter rests in their discretion." This was so held
by the supreme court of the United States, nearly thirty
years ago, in *Paul v. Virginia*, 8 Wall. 168, 181, affirmed in
that court by many subsequent cases, and as well by other
courts of the highest respectability and authority. *Hooper
v. California*, 155 U. S. 648, and cases cited; *Relfe v. Rundle*,
103 U. S. 222, 225; *Hartford F. Ins. Co. v. Raymond*, 70
Mich. 485; *Morse v. Home Ins. Co.* 30 Wis. 496; *State ex rel.
Drake v. Doyle*, 40 Wis. 175, 197; *State ex rel. Covenant M.
B. Asso. v. Root*, 83 Wis. 667, 680; *Wyman v. Kimberly-
Clark Co.* 93 Wis. 554.

In *Hooper v. California, supra*, the cases in the supreme
court of the United States on the subject are collected and
cited, and it was there stated that: "The principle that the
right of a foreign corporation to engage in business within
a state other than that of its creation depends solely upon
the will of such other state has been long settled, and many
phases of its application have been illustrated by the decis-
ions of this court. While there are exceptions to this rule,
they embrace only cases where a corporation created by one
state rests its right to enter another, and to engage in busi-
ness therein, upon the federal nature of its business; as, for
instance, where it has derived its being from an act of Con-
gress, and has become a lawful agency for the performance
of governmental or *quasi*-governmental functions, or where
it is necessarily an instrumentality of interstate commerce,
or its business constitutes such commerce, and is therefore
solely within the paramount authority of Congress. In these
cases the exceptional business is protected against interfer-
ence by state authority." In the case cited the court said:
"The state of California has the power to exclude foreign
insurance companies altogether from her territory, whether
they were formed for the purpose of doing a fire or a ma-

rine business. She has the power, if she allows any such companies to enter her confines, to determine the conditions on which the entry shall be made. And, as a necessary consequence of her possession of these powers, *she has the right to enforce any conditions imposed by her laws* as preliminary to the transaction of business within her confines by a foreign corporation, whether the business is to be carried on through officers or through ordinary agents of the company; and she has also the further right to prohibit a citizen from contracting within her jurisdiction with any foreign company which has not acquired the privilege of engaging in business therein, either in his own behalf or through an agent empowered to that end. The power to exclude embraces the power to regulate, to enact and enforce all legislation in regard to things done within the territory of the state which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious to the fullest extent, subject always, of course, to the paramount authority of the constitution of the United States." The doctrine thus established is, in our judgment, conclusive as to the validity of the pledge of the securities here in question, under the Wisconsin statute, and of the trusts therein specified. The defendant association clearly had the power to make the deposit as incident to the accomplishment of the purpose for which it was created.

In *North Hudson Mut. B. & L. Asso. v. First Nat. Bank,* 79 Wis. 31, 36, this court held that a building and loan association might lawfully do those things reasonably necessary in order to accomplish the objects and purposes of its organization which were not expressly forbidden. In general, in exercising the powers conferred by its charter, a corporation may adopt any proper and convenient means tending directly to their accomplishment, and not amounting to the transaction of a separate unauthorized business. *Clark v. Farrington,* 11 Wis. 306; *State ex rel. Priest v. Regents of*

*University*, 54 Wis. 159; *Madison, W. & M. Plank Road Co. v. Watertown & P. Plank Road Co.* 5 Wis. 173. The association defendant had not been forbidden to make. the deposit of its securities taken in the course of its business to enable it to enter the state of Wisconsin or any other state and obtain a license to transact its business therein. It was the absolute owner of these securities, and it might lawfully so use them. It was required by the statute that " if any securities on deposit as provided by this act are wholly or partially extinguished by payments on the same or otherwise, or such securities depreciate in value for any cause, new securities must be added, so that the deposit may at all times be kept good and of the value of $100,000." [Sec. 2014*b*, S. & B. Ann. Stats.] The association defendant, by accepting its license, was bound to comply with the law; and, in the absence of any allegations to the contrary, it must be presumed that all mortgages deposited at or after the date of the license, May 10, 1889, were deposited for the purpose of complying with the law and keeping its deposit up to the required amount of $100,000. The subsequent amendment to the articles of incorporation (July 11th), providing that " the board of directors shall not sell or dispose of any of the mortgages held or owned by the corporation," is relied on; but this provision must be construed, we think, in connection with the statute of Minnesota, which, as already noticed, quite clearly contemplated that the securities of the association might be used and pledged, if need be, for the purpose of complying with the law under which it could enter to transact business in another state. It was not intended by this amendment to deprive the corporation of the power, by the use of its securities, to maintain and keep good its deposits, in order to transact its business in the thirty-four states which it appears to have entered for that purpose. The more reasonable view would seem to be that the amendment was intended to prevent an absolute

sale or traffic in its securities, and not a deposit of such securities for the purpose indicated.

We arrive, therefore, at the conclusion that the deposit of securities in question, made with the state treasurer for the purpose indicated, was within the lawful power of the corporation as represented by its directors, and that the action of the directors in making it was binding upon the corporation and all its members to the extent and according to the terms of the statute under which it was made.

5. The deposit was, as we have said, within the power conferred upon the corporation, and not in violation of the trust reposed in the board of directors, that the affairs of the corporation should be managed, and its property and funds applied, solely for the purpose of carrying out the objects for which the corporation was created. It is well settled that a corporation cannot avail itself of the defense of *ultra vires* when the contract in question has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance of the contract. Much less will the claim that the transaction was *ultra vires* be allowed as a ground for rescinding the contract and restoring to the complaining party, on that ground, the property or funds with which he has parted, after he has had the benefit of full performance of the contract by the other party; and, in general,▪the plea of *ultra vires* will not be allowed to prevail, whether interposed for or against a corporation, when it will not advance justice, but, on the contrary, will accomplish a legal wrong. *Kadish v. Garden City E. B. & L. Asso.* 151 Ill. 531; *Whitney Arms Co. v. Barlow*, 63 N. Y. 62; *National Bank v. Matthews*, 98 U. S. 628, 629. "Where it is a simple question of capacity or authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted, in an action founded on it, to question its validity. It would

be in the highest degree inequitable and unjust to permit the defendant to repudiate a contract the fruits of which he retains." Sedgwick, Construction of Stat. & Const. Law, 73. In 2 Beach, Priv. Corp. § 425, the subject is fully considered, and numerous modern authorities are cited, showing that "where a contract has been in good faith fully performed, either by the corporation or the other party, the one who has received the benefit of it will not be permitted to resist its enforcement by the plea of a mere want of power." *Darst v. Gale*, 83 Ill. 136; *Carson City Sav. Bank v. Carson City Elevator Co.* 90 Mich. 550; *Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co.* 127 N. Y. 260; *Rider Life Raft Co. v. Roach*, 97 N. Y. 378; *Bradley v. Ballard*, 55 Ill. 415; *State Board of Agriculture v. Citizens' St. R. Co.* 47 Ind. 407; *Oil Creek & A. R. Co. v. Pennsylvania Transp. Co.* 83 Pa. St. 160, 166.

The result of these views is that the receiver appointed by the circuit court for Dane county, Wisconsin, is entitled to retain the securities in question, and to subject them, under the order of the court, to the fulfillment of the trust upon which they were so deposited; and, to that end, they may be sold or collected, and the proceeds so applied, and any residue that may remain must be turned over to the appellant, the receiver appointed by the district court of Hennepin county, Minnesota. The corporation defendant, as well as its stockholders and its receiver appointed by the court in Minnesota, are estopped from disputing the validity of the trust upon which the state treasurer had received these securities and held them when the corporation became insolvent and this action was commenced. The corporation, by its directors, consented to and made the deposit, and their action became binding alike on members and stockholders in other states; and they have thus waived all right, on legal or constitutional grounds, to question the validity of

the trust on which the securities are held, as expressed in the statute.

6. We cannot perceive how it can be maintained that the contract clause of the federal constitution can be invoked to release these securities from the operation and effect of such pledge and estoppel, whatever view may be taken of the rights and relations of the entire body of stockholders as between themselves and the corporation. They have waived their right to insist upon the constitutional objection they urge against the Wisconsin statute, or to question the validity of the trust. Whatever modification or change may have occurred in the contractual relations existing between these parties is the sole result of their lawful and proper consent, or of those who were chosen and fully empowered in law to represent them, namely, the board of directors, without whose authority the securities could not have been deposited or pledged under the statute. The right to invoke the contract provision of the federal constitution, we think, has been waived by them; and the case on this point falls strictly within the principle stated by Judge Cooley in his celebrated work on Constitutional Limitations (6th ed., p. 214), where he states that "there are cases where a law, in its application to a particular case, must be sustained, because the party who makes objection has, by prior action, precluded himself from being heard against it. Where a constitutional provision is designed for the protection solely of the property rights of the citizen, it is competent for him to *waive* the protection, and to *consent* to such action as would be invalid if taken against his will." And several instances of the application of this principle are given. The learned author states: "In these and the like cases the statute must be read with *an implied proviso* that the party to be affected shall assent thereto; and such consent removes all obstacle, and lets the statute in to operate the same as if it had in terms contained the condition."

There are many well-considered cases sustaining the position that a party may, by his own act or conduct, preclude himself from insisting upon constitutional objections to a statute affecting his rights. The subject is discussed by PAINE, J., in *Burrows v. Bashford*, 22 Wis. 104, where the opinion is expressed that it is not unconstitutional for the legislature to provide that a party may voluntarily subject himself to unconstitutional provisions as a condition to the enjoyment of a new advantage given by the act. So, in the present case, in consideration of the benefits derived by the defendant corporation and its shareholders from the statute under consideration, it being allowed to enter the state and transact business therein, they must be precluded from insisting upon the invalidity of the statute. *Bank of Columbia v. Okely*, 4 Wheat. 235; *People v. Murray*, 5 Hill, 468. A party may renounce a constitutional provision made for his benefit (*Embury v. Conner*, 3 N. Y. 511; *Lee v. Tillotson*, 24 Wend. 337), and, having waived it, cannot subsequently ask for its protection. The views we have already expressed render the contention of the appellant in respect to the relations which the shareholders of a mutual building association ordinarily sustain to the corporation and to each other inapplicable, as well as the contention that the enforcement of the trust specified in the statute in these securities will destroy equality of right between the shareholders in general, rendering, as it is contended, the Wisconsin shareholders preferred shareholders.

7. Whatever the practical result of the enforcement of the trust in favor of Wisconsin shareholders, creditors, and others sustaining contractual relations with the corporation defendant may be, it rests, as we think and as we hold, upon the consent of the corporation and of its shareholders lawfully given, as it well might be in the present case, by and through its board of directors, for a valid consideration received by the corporation to the benefit and advantage of those now

Lewis vs. The American Savings & Loan Association and others.

denying its validity. The right of the state of Wisconsin to pass and enforce the act for the better protection of its citizens and residents against irresponsible foreign corporations entering, or desiring to enter, the state and transact business therein with its citizens, cannot, we think, be denied. We cannot assent to the position that the security afforded by the deposit required by the act, and thus consented to and made by the corporation through its directors, may be avoided or nullified at the instant when the necessity for retaining and enforcing it becomes imperative. If it was lawful to require and take the security, it is rightful and lawful to insist on it, and enforce it, according to the very terms and true meaning of the act under which it was given; and insolvency of the corporation will not release the trust or discharge it. The language of the Wisconsin statute is free from doubt or ambiguity, and construction has no office to perform in respect to it. Its meaning and purpose are obvious, and it is the manifest duty of the court to give it full effect. This cannot be done without strictly applying the securities or their proceeds to the uses prescribed by the statute. This trust was not created for the benefit or indemnity of members, creditors, and shareholders of the defendant corporation generally, residing out of the state. These were not within its plan, purpose, or policy. The deposit was required and made in pursuance of a wise state policy, solely for the benefit and indemnity of resident shareholders and creditors, and for their protection and advantage only. Language could not have been readily employed to make the intention plainer than is expressed in the statute. To now turn these securities over to the appellant, to the end that they may be collected and converted, and the proceeds applied ratably in satisfaction of all the claims of shareholders and creditors generally, whether residents of Wisconsin or not, would, we think, be a manifest perversion of the trust, and render the security and indemnity they were deposited

---

to furnish resident shareholders, and others indicated in the statute, a mere delusion.

We think that the demurrers to the appellant's answer and counterclaim were properly sustained.

*By the Court.*— The orders appealed from are affirmed.

On the distribution of the assets of an insolvent insurance company, see an extensive note to *Boston & A. R. Co. v. Mercantile T. & D. Co.* (82 Md. 535), in 38 L. R. A. 97.— REP.

