**DAILEY et al. v. FEDERAL BUILDING & LOAN ASS'N.**

No. 2177.

District Court, D. Wyoming.

Aug. 27, 1932.

C. R. Ellery and P. C. Spencer, both of Cheyenne, Wyo., for plaintiffs.

Ernest L. Rhoads, Bernard J. Seeman, and John E. Gorsuch, all of Denver, Colo., for defendant.

KENNEDY, District Judge.

This is a suit in equity brought by plaintiffs in the interest of many persons constituting a class to which the plaintiffs belong, against the defendant, a building and loan

association organized under the laws of the state of Colorado for the purpose of marshaling certain assets which were deposited by the defendant with the state examiner of the state of Wyoming for the protection of certificate holders of the defendant residing in said state, enforcing a lien claimed upon said assets and for the appointment of a receiver to carry out the relief asked in regard to their asserted claims.

After the filing of the bill of complaint, a hearing was had and the appointment of a receiver consented to by the defendant without waiving any of its rights in the matter of a defense to the allegations of the bill. Thereafter issues were joined, evidence taken, and the matter submitted to the court for final determination upon trial briefs which have now been filed.

The principal and necessary facts for the determination of the issues appear to be substantially as follows: The plaintiffs are residents of Wyoming and the defendant is a building and loan association organized under the laws of the state of Colorado, with a certificate as required by law authorizing it to do business in the state of Wyoming. While so doing business it had a substantially large number of certificate holders resident within the state who were making monthly payments upon the purchase price of such certificates, among whom were the plaintiffs in this suit. In the year 1927, the Legislature of the state of Wyoming passed an act which purported to further regulate building and loan associations, domestic and foreign, and among other provisions was one requiring the deposit of securities by foreign building and loan associations for the protection of resident certificate holders. That portion of the law is found in section 17-121 of the Wyoming Revised Statutes 1931 as follows:

"Every corporation, company or association coming under the provisions of § 17-120, shall deposit with the State Examiner of the State of Wyoming, Fifty Thousand ($50,-000.00) Dollars, either in cash or bonds of the United States, or bonds of any State in the United States, or bonds of any county or municipal corporation in the State of Wyoming, or mortgages being first liens on improved and productive real estate located within this State, of which the liens do not exceed sixty-five per cent of the value of the property accruing said lien, which securities shall be approved by the State Examiner. Said deposit shall be held as security for all claims of residents of this State against such foreign associations, and shall be liable for all judgments or decrees thereon; and said securities shall not be released until all shares of such foreign associations held by residents of this State shall have been fully redeemed and paid off, and its contracts and obligations to residents of this State shall have been fully performed and discharged. Such foreign associations may collect and use the interest on any securities so deposited, so long as it fulfills its obligations and complies with the provisions of this article. It may also exchange them for other securities of equal value if satisfactory to the State Examiner."

In April, 1927, the defendant corporation by an amendment to its articles was authorized to obtain permission to do business in other states as it might deem proper. For the purpose of continuing its business in the state of Wyoming, the defendant thereupon made a deposit with the state examiner of securities consisting of various notes secured by mortgages upon real property located in the state of Colorado which were accepted by the state examiner and held for the purpose indicated by the statute. The corporation continued its business in the state of Wyoming until some time in the year 1931, when it became insolvent and passed into the hands of a receiver in the courts of Colorado. Two or three of the securities so deposited with the state examiner in Wyoming proved to be forged instruments, the proofs showing that they were so forged by the officers of the defendant corporation, but upon property of which the corporation was at the time the equitable and title owner. Under the provisions of the Colorado statute, building and loan corporations are not allowed to receive negotiable notes, nor do such statutes specifically authorize building and loan associations to pledge their assets with the authorities of other states for the exclusive benefit of stockholders of such states. The minute books of the defendant do not show any action of its board of directors authorizing the deposit of the securities in question.

Four points are raised by the defendant with respect to the legality and legitimacy of the proceeding undertaken by plaintiffs.

(1) It is contended by the defendant that the law of Colorado prohibiting the association from receiving instruments negotiable in form and the lack of express authority to pledge securities held by it for the purpose of extending its business in other states nullifies the pledges here made. In my view, this contention cannot be sustained. It is not necessary that the instruments deposited

should be negotiable in order that an equitable assignment be effected. Furthermore, the articles of incorporation of the defendant were amended so as to permit it to extend its business into other states when it was deemed advisable. A question of similar nature arose in the case of Lewis v. American Savings & Loan Association, 98 Wis. 203, 73 N. W. 793, 39 L. R. A. 559, where the securities deposited in another state were nonnegotiable, and where there was no specific power granted to the association to make the deposit in this respect. At page 799 and 800 of 73 N. W., the Supreme Court of Wisconsin says:

"The subsequent amendment to the articles of incorporation (July 11th), providing that 'the board of directors shall not sell or dispose of any of the mortgages held, or owned by the corporation,' is relied on; but this provision must be construed, we think, in connection with the statute of Minnesota, which, as already noticed, quite clearly contemplated that the securities of the association might be used and pledged, if need be, for the purpose of complying with the law under which it could enter to transact business in another state. It was not intended by this amendment to deprive the corporation of the power, by the use of its securities, to maintain and keep good its deposits, in order to transact its business in the 34 states which it appears to have entered for that purpose. The more reasonable view would seem to be that the amendment was intended to prevent an absolute sale or traffic in its securities, and not a deposit of such securities for the purpose indicated. We arrive, therefore, at the conclusion, that the deposit of securities in question made with the state treasurer, for the purpose indicated, was within the lawful power of the corporation as represented by its directors, and that the action of the directors in making it was binding upon the corporation. and all its members to the extent and according to the terms of the statute under which it was made.

"5. The deposit was, as we have said, within the power conferred upon the corporation, and not in violation of the trust reposed in the board of directors, that the affairs of the corporation should be managed, and its property and funds applied, solely for the purpose of carrying out the objects for which the corporation was created. It is well settled that a corporation cannot avail itself of the defense of ultra vires when the contract in question has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract. Much less will the claim that the transaction was ultra vires be allowed as a ground for rescinding the contract, and restoring to the complaining party, on that ground, the property or funds with which he has parted, after he has had the benefit of full performance of the contract by the other party; and, in general the plea of ultra vires will not be allowed to prevail, whether interposed for or against a corporation, when it will not advance justice, but, on the contrary, will accomplish a legal wrong. * * * The result of these views is that the receiver appointed by the circuit court for Dane county, Wis., is entitled to retain the securities in question, and to subject them, under the order of the court, to the fulfillment of the trust upon which they were so deposited; and, to that end, they may be sold or collected, and the proceeds so applied, and any residue that may remain must be turned over to the appellant, the receiver appointed by the district court of Hennepin county, Minn. The corporation defendant, as well as its stockholders and its receiver, appointed by the court in Minnesota, are estopped from disputing the validity of the trust upon which the state treasurer had received these securities, and held them when the corporation became insolvent, and this action was commenced. The corporation, by its directors, consented to and made the deposit, and their action became binding alike on members and stockholders in other states; and they have thus waived all right, on legal or constitutional grounds, to question the validity of the trust on which the securities are held, as expressed in the statute."

(2) The defendant makes the contention that, owing to the fact that the board of directors of the association took no affirmative action with respect to authorizing the deposit to be made with the state examiner of the state of Wyoming, the action of the officers in this respect is therefore illegal. In regard to this contention, it appears that, while the minute books of the association fail to show any specific authority for the action of its officials in this respect, yet, the deposit having been made and continued without objection on the part of the directors for a substantially long period of time, it must be presumed that such action was thereby ratified. In Sparks v. National Masonic Acc. Association, 100 Iowa, 458, 69 N. W. 678, the Supreme Court of Iowa disposes of the contention in the following language at page 681:

"We think that when a foreign insurance company is shown to have transacted business in a state wherein by statute certain acts are required to be done by such company before it has the right to transact business therein, a conclusive presumption arises that the company has complied with the requirements of the law in that respect. Under such circumstances, the company ought not to be allowed to plead, and show its own violation of law as a defense to an action brought upon the policy. To so permit would be inviting it to take advantage of its own wrongful act, perpetrate a fraud upon those who may deal with it in good faith, and in proper reliance upon the fact that the company had conformed to the law which authorizes it to transact business."

See, also, Lewis v. American Savings & Loan Association, supra, and Ehrman v. Tutonia Ins. Co. (D. C.) 1 F. 471.

In Pittsburg, C. & St. L. Railway Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, at page 381, 9 S. Ct. 770, 773, 33 L. Ed. 157, Mr. Justice Gray, in speaking for the court, says: "When the president of a corporation executes in its behalf, and within the scope of its charter, a contract which requires the concurrence of the board of directors, and the board knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified his act. Indianapolis Rolling-Mill v. St. Louis, etc., Railroad, 120 U. S. 256, 7 S. Ct. 542 [30 L. Ed. 639]. And when a contract is made by any agent of a corporation in its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract, without objection, it may be presumed to have authorized or ratified the contract of its agent. Bank of Columbia v. Patterson, 7 Cranch, 299 [3 L. Ed. 351]; Bank of United States v. Dandridge, 12 Wheat. 64 [6 L. Ed. 552]; Zabriskie v. Cleveland, etc., Railroad, 23 How. 381 [16 L. Ed. 488]; Gold Mining Co. v. National Bank, 96 U. S. 640 [24 L. Ed. 648]; [Illinois] Pneumatic Gas Co. v. Berry, 113 U. S. 322, 327, 5 S. Ct. 525 [28 L. Ed. 1003]. This doctrine was clearly and strongly stated by Mr. Justice Story, delivering the judgment of this court, in each of the first two of the cases just cited."

■ (3) The next contention is to the effect that, because the securities deposited were not first liens on real estate located within the state of Wyoming, they were therefore not in accordance with the Wyoming statute, and consequently void. This defense fails when considered in connection with the circumstances surrounding the transactions involved in the case at bar. While the deposit as a pledge may not have met all requirements of the statute, it was nevertheless offered by the defendant for the purpose of further availing itself of the opportunity to transact business in Wyoming, which result was secured, and therefore was based upon a valid consideration. The principle is akin to that of a bond given when not in strict conformity with statutory regulation. In Carnegie, Phipps & Co. v. Hulbert, 70 F. 209 (C. C. A. 8), Judge Caldwell, speaking for the court at page 216, says: "It is well settled that a bond given in pursuance of some requirement of law may be valid and binding on the parties, although not made with the formalities or executed in the mode provided by the statute under which it purports to have been given. This rule rests on the principle that, although the instrument may not conform to the special provision of the statute or regulations with which the parties executed it, nevertheless it is a contract voluntarily entered into upon a sufficient consideration, for a purpose not contrary to law, and therefore it is obligatory upon the parties to it in like manner as any other contract or agreement is held valid at common law. Bank v. Smith, 5 Allen [Mass.] 415; U. S. v. Bradley, 10 Pet. 357 [9 L. Ed. 448]; U. S. v. Linn, 15 Pet. 311 [10 L. Ed. 742]; U. S. v. Hodson, 10 Wall. 395 [19 L. Ed. 937]; Sheppard v. Collins, 12 Iowa, 570. The bond in suit possesses all the requisites of a good common-law bond. It was voluntarily given upon a sufficient consideration, for a lawful purpose, and is as obligatory on the makers as if it had conformed technically with the requirements of the act."

■ Furthermore, the defendant, having induced the examiner to accept these securities, and thereby being permitted to secure the advantage of continuing its business in the state of Wyoming, ought not now to be heard to assert its irregular action in this respect as a defense. In Maryland Casualty Co. v. Gates (C. C. A.) 290 F. 65, the rule is expressed in the syllabus in the following language: "'Equitable estoppel' operates to prevent a party from asserting his rights under a technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth."

■■ (4) The last contention of the defendant is that in any event the notes and securi-

ties shown to have been forged cannot be enforced. This would probably be true were it not that the defendant association was at the time the owner of the property upon which the securities forged by its officers were tendered to the state examiner. The association under these circumstances should not be permitted to profit by the wrongdoing of its duly constituted officials. Under the circumstances here, the pledge was made of property which the defendant association owned and over which it had control, and which it would undoubtedly have had the right to pledge direct. To hold otherwise would be to permit the defendant corporation to profit by the wrongful acts of its officials and by the fraud which it practiced upon the examiner upon which was predicated its right to do its business in the state of Wyoming. Neither would it appear that the circumstance of the property being located in a foreign jurisdiction affects the power of a court of equity to administer this phase of the controversy now before it and to which the defendant is a party in this court. In Phelps v. McDonald, 99 U. S. 298, 25 L. Ed. 473, the thought is expressed in the syllabus as follows: "Although a court of equity has not within its territorial jurisdiction the real or the personal property which is the subject-matter in controversy, it may, having the necessary parties before it, compel, by appropriate process, the performance of every act, which, if done voluntarily by them according to the lex loci rei sitæ, would give full effect to its decree in personam."

In the more recent case of Hartford Accident Co. v. Southern Pac. Co., 273 U. S. 207, at page 217, 47 S. Ct. 357, 360, 71 L. Ed. 612, is found the following language: "Such a conclusion is quite in accord with the rules governing equity procedure, in general conformity with which this limitation of liability statute has been construed and enforced. Where a court of equity has obtained jurisdiction over some portion of a controversy, it may, and will in general, proceed to decide the whole issues and award complete relief, even where the rights of parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law."

My conclusions are, that the plaintiffs should prevail and the receivership should be continued. Appropriate findings, conclusions, and a decree may be submitted in harmony with the foregoing and the bill of complaint, with costs to plaintiffs, reserving to the defendant all proper exceptions.