ERDMANN VS. THE MUTUAL INSURANCE COMPANY OF THE ORDER OF HERMAN'S SONS OF WISCONSIN.

*Forfeiture of insurance waived.*

1. There is nothing in the charter or constitution of the defendant which renders inapplicable to it the doctrine of waiver applicable to other insurance companies.
2. Forfeitures are not favored in the law; and the benevolent object of the order for whose benefit the defendant company was organized, with the provisions of defendant's constitution and by-laws indicating a purpose to mitigate forfeitures, require the court to lay hold of any act showing an intention of defendant to waive the forfeiture in this case.
3. The right to payment of a certain sum by defendant as insurance on a life was forfeited in case the assured at his death had not paid all assessments; but, after his death, all assessments against him were paid for him in pursuance of authority granted and a request made during his lifetime, and were by his lodge (which was defendant's agent for that purpose) received and forwarded to defendant, and by it accepted and retained until after commencement of this suit, with knowledge of the death of the assured on the part of the lodge and the defendant at the times of such receipt and acceptance. *Held,* that the forfeiture was waived.

APPEAL from the County Court of *Milwaukee* County.

Action by the widow of George Erdmann for $1,000 alleged to have become due her from the defendant in consequence of the death of her husband, who is alleged to have been at the time of his death a member in good standing of Armin Lodge No. 9 of the order of Herman's Sons of this state, incorporated by chapter 189, P. & L. Laws of 1871. The answer denies defendant's liability, on the ground that George Erdmann was not at the time of his death a member in good standing

Erdmann vs. The Mut. Ins. Co. of the Order of Herman's Sons of Wisconsin.

of said lodge, but for a long time prior to his death had been in arrears for dues and assessments.

Provisions of the charter of the defendant company relied upon by the defense, are stated in the opinion. Sec. 9 of the charter also provides that, "upon the death of any member who shall be entitled at the time to the benefits of this corporation, his wife or heirs . . . shall be entitled to receive, out of the funds of this corporation, an amount to be specified in its constitution and by-laws . . ."

Section 3 of the constitution of the defendant company provides that "every Herman's Son belonging to a regular lodge in the state of Wisconsin is a member of the mutual insurance company so long as he shall pay his assessments promptly." Section 9 provides that, "in case of the death of a brother having claims upon the company, the insurance money of $1,000 shall be paid within sixty days to his widow or children," etc.

The evidence tended to show that between November 3, 1876, and January 24, 1877, seven assessments, of fifty cents each, were made against each member of the company, payable within thirty days after their respective dates; and that none of these had been paid by George Erdmann, at the time of his death. The other facts will sufficiently appear from the opinion.

By direction of the court, a verdict was returned in plaintiff's favor; and from a judgment thereon defendant appealed.

For the appellant, a brief was filed by *Jenkins, Elliott & Winkler*, and the cause was argued orally by *D. S. Wegg*. They contended, among other things, 1. That, by the express provisions of the charter and constitution, the defendant's liability to pay insurance could arise only when the member had fully paid his assessments at the time of his death; and that where a member died in arrears, the company under its charter could not make a valid contract to pay. *Mound City Ins. Co. v. Curran*, 42 Mo., 374; *Coles v. Ins. Co.*, 18 Iowa, 425;

*Simeral v. Ins. Co.*, id., 319; *Walden v. Ins. Co.*, 12 La., 135; *Couch v. Ins. Co.*, 38 Conn., 181; *Brewer v. Ins. Co.*, 14 Gray, 203; *Spitzer v. Ins. Co.*, 6 Duer, 6; *Head v. Ins. Co.*, 2 Cranch, 127; *Montreal Ins. Co. v. McGilivray*, 9 Lower Canada, Q. B., 488. 2. That where no contract of insurance upon a person's life is in force at the time of his death, none can arise after his death, for want of a subject-matter. "As in the case of an original insurance, the life must still be in being, so it must be in case of a renewal or a waiver." Bliss on Life Ins., § 190; *Tarleton v. Staniforth*, 5 Durnf. & E., 695; *S. C.*, affirmed in 1 Bos. & Pul., 471; *Salvin v. James*, 6 East, 571; *Acey v. Fernie*, 7 M. & W., 151; *Simpson v. Ins. Co.*, 2 C. B., N. S., 257; *Prichard v. The Merchants', etc. Ass. Society*, 3 id., 622; *Phœnix Life Ins. Co. v. Sheridan*, 8 H. L. Cas., 745; *Mutual Benefit Life Ins. Co. v. Ruse*, 8 Ga., 534; *Howell v. Ins. Co.*, 3 Rob., 232; *S. C.*, on appeal, 44 N. Y., 276. This court indeed held in *Joliffe v. Madison Mut. Ins. Co.*, 39 Wis., 111, that an acceptance by the insurer of part of the premium on a fire insurance policy with knowledge that the property had been destroyed, was a waiver; but that decision is based upon the peculiar language of the policy. The contract there was also between experts and inexperts; the condition inserted by the company exclusively for its own benefit; and the rule of strict construction was applied. Here the terms of the contract are fixed by the charter and constitution, and are for the mutual benefit of the parties; and the rule of strict construction should not be applied, but the clear intent of the legislature should be enforced, *Want v. Blunt*, 12 East, 183. 3. That there could be no estoppel here, because defendant had done no act misleading plaintiff to her injury (May on Ins., § 507; *Security Ins. Co. v. Fay*, 22 Mich., 467; *Union Ins. Co. v. McMillen*, 24 Ohio St., 67; *Baker v. Ins. Co.*, 43 N. Y., 283, 289); especially since the assessments made before Erdmann's death were absolutely due and payable to the company in any event. *Joliffe*

Erdmann vs. The Mut. Ins. Co. of the Order of Herman's Sons of Wisconsin.

*v. Madison Ins. Co.*, *supra*; *Howland v. Edmonds*, 24 N. Y., 307; *Smith v. Ins. Co.*, 3 Hill, 508; *Iowa State Ins. Co. v. Prossee*, 11 Iowa, 115.

For the respondent, a brief was filed by *Cotzhausen, Smith, Sylvester & Scheiber*, and the cause was argued orally by *Mr. Cotzhausen*.

COLE, J.   In the view which we have taken of this case, it is unnecessary to decide whether the first and second errors assigned for a reversal of the judgment be well taken or not. Those errors relate to the exclusion of evidence, given or offered, as to the practical construction of the charter and constitution by members and officers of the defendant corporation, as bearing on the question when a member was in good standing so as to be entitled to the benefit of the insurance money.   It is said to be the clear intent of the charter and constitution, that the insurance should be recovered only when a member, at the time of his death, was in good standing, and had fully paid all assessments; and it is insisted that in no other contingency can an obligation on the part of the defendant to pay possibly arise.   Upon examination of the charter, we fail to discover any intent to create a contract liability and fix absolutely the conditions and circumstances when it will arise.   In other words, we suppose the company is subject to the application of those legal principles applicable to other mutual life insurance companies.   Doubtless the defendant might waive a forfeiture in a given case.   The charter gives the corporation power to adopt, for its government and the management of its affairs, a constitution and by-laws, and to make such rules and regulations as may be deemed necessary to carry into effect the object of the association, and then proceeds to declare that only members in good standing of any lodge of the order of Herman's Sons in this state shall be members of the corporation.   Sections 4, 5, ch. 189, P. & L. Laws of 1871.   The charter evidently contemplates that only

members of the order in good standing, as a rule, will be beneficiaries of the fund.   But there is no provision either in the charter or constitution, as we understand them, which prevents the company from waiving a default on the part of any of its members.   "A party always has the option to waive a condition or stipulation made in his own favor.   The company was not bound to insist upon a forfeiture, though incurred, but might waive it."   BRADLEY, J., in *Knickerbocker Life Ins. Co. v. Norton.*   See THE REPORTER, April 3, 1878. So, assuming for the purposes of this case, as we may do, that Erdmann, the husband of the plaintiff, was in default in paying his assessment, still the question arises, Do not the facts show that the company waived that default by receiving and retaining the money, under the circumstances, with full knowledge of the facts?   There is no controversy about the facts on which the question of waiver depends.   It appears that Erdmann was killed by an accident at Racine, on the afternoon of February 20, 1877.   At that time he was a member of Armin Lodge of Milwaukee, and there were unpaid the quarter dues to his lodge, and the last seven assessments made by the defendant company.   On the evening of the 20th, the regular weekly meeting of the lodge was held.   On the 19th, Erdmann, anticipating that he would not be able to attend the meeting the next 'evening, gave a brother member, by the name of Eggers, $2 to pay his dues, with the request that, if more should be due, Eggers would advance the excess. It appears that the quarterly dues amounted to $1.50, and the assessments to $3.50.   This entire amount, $5, was voluntarily paid by one Wagner to the financial secretary of the lodge, at the meeting on the evening of the 20th.   Wagner had been requested by Eggers to make this payment, as the latter could not attend; and Wagner did so out of his own funds.   The lodge had been informed at this time of Erdmann's death, and had appointed a committee to receive his remains.   The Armin Lodge transmitted the money to the

secretary of the defendant, February 23d, who entered it on his books to the credit of Erdmann. On the 6th of March, a question having arisen in the Armin Lodge as to whether Erdmann was in default, a committee was appointed to ascertain and report the facts about the payment of the $5 for Erdmann. The committee reported March 13th that Erdmann had given the money to Eggers to pay his dues and assessments; the lodge ordered its secretary to make out the ordinary certificate of the death of Erdmann, and that he was in good standing in the lodge, and send it, together with the testimony taken before the committee, to the secretary of the defendant; all of which was done on the 16th of that month. So it seems that the defendant, with full knowledge of all the facts as to the time and manner of the payment of this money, accepted and retained it long after the commencement of this suit. This certainly amounted to a waiver of the forfeiture, if one had occurred. *Joliffe v. The Madison Mutual Ins. Co.*, 39 Wis., 111. For both the lodge, which was the agent of the defendant for that purpose, received and transmitted the money, and the defendant itself accepted and retained it, after notice of the death of Erdmann, and with full knowledge of all the facts relating to the payment. The case comes fully within the principle of the above decision.

It is suggested by the learned counsel for the defendant, that an acceptance by the company of part of the premium on the fire insurance policy was held a waiver in the Joliffe case on the peculiar language of the policy, and that the decision does not, therefore, apply to the case before us. It is true, Mr. Justice Lyon alludes, in the opinion, to the peculiar terms of the contract; but the waiver is put distinctly and clearly on the ground that, as the company had accepted the cash premium after the default and notice of loss, this operated as a waiver of the suspension clause in the policy. The same principle is decided by the supreme court of the United States in *Knickerbocker Life Ins. Co. v. Norton, supra*. That was

au action on a policy of life insurance, where there had been an extension by the agent of the time for the payment of the premium; and it was held that the forfeiture for the nonpayment had been waived. We have already said that there was nothing in the charter of the defendant which rendered the doctrine of waiver inapplicable to it. We therefore hold that the legal effect of accepting and retaining the money paid on behalf of Erdmann, with full knowledge of the facts, operated as a waiver of the forfeiture.

We reach this conclusion the more readily in view of the elementary doctrine that forfeitures are not favored in the law, and because several provisions of the constitution and by-laws seem calculated, if not altogether to prevent, certainly to mitigate, a forfeiture resulting from nonpayment of dues. For instance, one section of the constitution declares that every member of the order shall be a member of the insurance company, so long as he shall pay his assessments promptly (sec. 3); another provides that a member suspended for nonpayment of dues may be admitted to his lodge upon paying either all assessments which were made during his suspension, or the initiation fee appertaining to his age (sec. 6); another provides that a brother who is indebted for six months' dues, and does not pay within fourteen days, on the request of the secretary, shall be forthwith stricken from the list of members (sec. 1, art. 14); while the by-laws contain several provisions prescribing the terms and conditions upon which a member who is in arrears for his dues and fines, may be restored to his rights in the company. Now it would be doing violence to the spirit of these provisions, and the benevolent object of the order, not to lay hold of any act or circumstance which indicated an intention on the part of the defendant to waive the forfeiture.

It is claimed that as Erdmann died while in arrears, payment could not have the effect to revive the contract. But the doctrine of waiver goes upon the ground that the contract

JANUARY TERM, 1878. 383

Streeter and another vs. The Chicago, Milwaukee & St. Paul R'y Co.

is continued in existence; that while a cause of forfeiture might have occurred, yet the company did not elect to take advantage of it. This disposes of all the material questions in the case.

*By the Court.* — The judgment of the county court is affirmed.