MORRISON vs. THE WISCONSIN ODD FELLOWS' MUTUAL LIFE INSURANCE COMPANY.

*November 26, 1883 — January 8, 1884.*

LIFE INSURANCE. *(1)* Change in by-law affecting contract. *(2)* Notice of misrepresentation: Waiver. *(3)* Waiver of by-laws. *(4)* " Sound health," defined. *(6)* Evidence as to health after insurance.
DEPOSITION. *(5)* Part only may be read to jury.

1. Where a provision of the charter and by-laws of the company constitutes a part of a contract of insurance, a subsequent alteration thereof cannot affect such contract without the consent of the assured.

Morrison vs. The Wisconsin Odd Fellows' Mutual Life Ins. Co.

2. Where an insurance company has in its possession abundant evidence of a misrepresentation in an application for insurance, and it is its duty to examine such evidence, it is chargeable with notice of the misrepresentation. And if, after notice, it fails to cancel the insurance and continues to make assessments upon the assured, it waives the right to cancel.

3. The provisions of a *by-law* of an insurance company restricting membership in a certain class to persons under a certain age, may be waived. *Luthe v. F. M. F. Ins. Co.*, 55 Wis., 543, distinguished.

4. The term "sound health," as used in contracts for life insurance, does not mean absolute freedom from bodily infirmity or tendency to disease. Thus, "a touch of dyspepsia coming on," which manifests itself only after long intervals, which yields readily to medical treatment, and which is not shown to have been organic and excessive, is not inconsistent with a representation that the person so affected is in sound health.

5. A party may introduce in evidence and read to the jury a part only of a deposition. The opposite party may read the remainder.

6. The health of the assured not being misrepresented in his application, evidence as to his health later and the disease of which he died is immaterial.

APPEAL from the Circuit Court for *Walworth* County.

The action is to recover on a certificate of membership issued by the defendant company which insures the life of the plaintiff's husband, William Morrison; the amount of the insurance being payable, by the terms of the contract, to the plaintiff. Under its by-laws the company issued certificates of membership in several distinct classes, and the deceased held such certificates in three of those classes, designated respectively classes "A," "E," and "D." On the death of each member of any class his representative became entitled to receive of the company $1,000 or less, according to the number of members in that class. The money was usually raised by an assessment of one dollar on each member of the particular class of which deceased was a member, but was sometimes paid out of the general fund of the company. Any Odd Fellow, if qualified by the rules of the company, might become a member of any or all of

the classes. Mr. Morrison died January 9, 1882, and the company paid the plaintiff the sum pertaining to his membership in classes "A" and "D," but refused to pay the sum pertaining to his membership in class "E." This action was brought to recover the same.

Class "E" was authorized by the defendant's board of directors, November 10, 1875, by the adoption of the following resolution: "Resolved, that class 'E,' which was ordered to be opened by the president, be approved, except that the age of the applicant be limited to fifty years." In December of that year Mr. Morrison made application to be admitted as a member of class "E," and a certificate of membership therein was duly issued to him. Such application was a printed blank, filled in by the secretary of "Trojan Lodge, No. 55," of East Troy, of which lodge Mr. Morrison was a member, and was signed by Mr. Morrison. It contains the following clauses: "My age is forty-six years;" "I am, so far as I know, in sound health." In his first application for membership in defendant company, made in May, 1872, Mr. Morrison stated his age to be fifty-three years; and in his application for membership in class "D," made in September, 1880, he represented his age to be sixty-two years.

The company resisted payment of the claim on the ground that the representations in the application for membership in class "E" were false and fraudulent in respect to the age and health of Mr. Morrison. It also answered in abatement that under the regulations of the company the claim is not due. This answer in abatement was overruled and disregarded by the circuit court.

On the trial, after the testimony was closed, the circuit judge directed the jury to find for the plaintiff for the amount claimed, which they accordingly did. A motion for a new trial was denied, and judgment for the plaintiff entered pursuant to the verdict. A further statement of

the testimony and rulings of the court is contained in the opinion. The defendant appeals from the judgment.

For the appellant there was a brief by *I. W. & G. W. Bird*, and oral argument by *Mr. G. W. Bird.* They contended, *inter alia*, that the misrepresentations in the application did more than simply work a forfeiture. The certificate, having been obtained by a positive, intentional act of fraud, could have no binding force whatever. *Encking v. Simmons*, 28 Wis., 272; *Walker v. Ebert*, 29 id., 194; *Kellogg v. Steiner*, id., 626. The acts of the secretary in making and receiving the assessments would not amount to a waiver of a forfeiture, because not done with full knowledge of the facts or with an intention to waive. *Bennecke v. Conn. Mut. L. Ins. Co.*, 105 U. S., 355; *Robertson v. Metropolitan L. Ins. Co.*, 88 N. Y., 541; *Globe Mut. L. Ins. Co. v. Wolff*, 95 U. S., 326; *N. Y. L. Ins. Co. v. Statham*, 93 id., 24; *Knickerbocker L. Ins. Co. v. Norton*, 96 id., 234; *Cannon v. Home Ins. Co.*, 53 Wis., 585; *Security Ins. Co. v. Fay*, 22 Mich., 467. He relied, and had a right to rely, upon the application on which he was acting, and the party guilty of the fraud could not require him to inquire further. *McClellan v. Scott*, 24 Wis., 81; *Fitch v. Am. P. L. Ins. Co.*, 59 N. Y. 557; *Foot v. Ætna L. Ins. Co.*, 61 id., 571; *Cushman v. U. S. L. Ins. Co.*, 63 id., 404. The by-laws enacted pursuant to the charter prohibited the admission of Mr. Morrison to class " E," and the secretary was powerless to waive such prohibition. May on Ins., secs. 146–150; *Luthe v. Farmers' M. F. Ins. Co.*, 55 Wis., 543; *Brewer v. Chelsea M. F. Ins. Co.*, 14 Gray, 203.

For the respondent there was a brief by *Fish & Dodge* and *E. Merton*, and oral argument by *Mr. Fish* and *Mr. Merton.*

LYON, J. I. The answer in abatement of the action, which was overruled by the circuit court, will first be considered. In the charter of the company (P. & L. Laws of 1869, ch.

43, sec. 7), it is provided that the insurance shall be payable within sixty days after notice of the death of a member shall be communicated to the secretary of the company by the proper officer of the lodge of which the deceased was a member. At the time the certificate of insurance in suit was issued, in 1875, a by-law of the defendant company was attached thereto, to the effect, as provided in the charter, that a loss should be payable sixty days after due notice to the secretary of the company of the death of the insured member. In 1880 a new regulation was adopted by the company, which provides that a loss shall be payable ninety days after date of the notice of an assessment to pay such loss. The answer in abatement is based upon this regulation. The company utterly refuses to give notice of an assessment to pay the loss, and then pleads that the loss is not due until such notice is given. We need not determine whether this regulation is reasonable and therefore valid, because we are of the opinion that it does not affect a contract of insurance made before it was adopted. We think it indisputable that the above provision of the charter and original by-law is a part of the contract of insurance, and cannot be changed at the will of the company without the consent of the insured. Due notice of the death of Mr. Morrison having been given to the secretary of the defendant more than sixty days before this action was commenced, if the company is not released on other grounds the loss was due and payable when the suit was brought. Hence, the court below properly overruled the answer in abatement.

II. The defenses to this action on the merits are that Mr. Morrison fraudulently misrepresented both his age and condition of health in his application for membership in class "E" of the defendant company. There was sufficient testimony to support a finding by a jury that he did misrepresent his age — stating it to be forty-six years, when in fact he was ten years older — and was then ineligible to member-

Morrison vs. The Wisconsin Odd Fellows' Mutual Life Ins. Co.

ship in class "E." In determining whether the court properly directed a verdict for the plaintiff, every fact adverse to the plaintiff's right to recover, which the testimony tends to prove, must be taken as proved. Hence, it must be assumed that Mr. Morrison misrepresented his age in such application. Assuming this, any rulings of the court on objections to testimony offered on the subject cease to be of any importance and will not be further noticed.

The learned counsel for the defendant maintains that the effect of such fraudulent misrepresentation of age is to forfeit the contract of insurance and relieve the defendant from liability upon it. Whether or not this is a correct proposition is a vital question in the case. It is understood that the circuit court held the negative of the proposition, on the ground that the undisputed evidence showed conduct on the part of defendant in respect to the insurance which was a waiver of any forfeiture. The facts established by the evidence are briefly these: Mr. Morrison became a member of class "A" in 1872. In his application for such membership he stated his age at fifty-three years. He paid an admission fee of five dollars. In 1880 he became a member of class "D," and in his application for such membership he gave his age at sixty-two years. In his application for membership in class "E," Mr. Morrison stated that he was a member of class "A," and in his last application he stated his membership in classes "A" and "E." On becoming a member of classes "E" and "D," he paid an admission fee of but one dollar in each class. The amount required to be paid on his first admission is fixed by sec. 2 of the charter at five dollars. The admission fee to any additional class is fixed by the company at one dollar. It is understood that a member of one class cannot be admitted to another unless he has paid all assessments against him in that class. After Mr. Morrison became a member of class "E," he paid forty assessments made against him in that class by the proper

officer of the company. Ten of these were so made, and were paid by him after his certificate of membership in class " D " was issued. The secretary, who makes the assessments for the company, is the custodian of the books of the company, and in these books are entered the names, ages, residences, etc., of all the members of each class.

When the secretary received the application of Mr. Morrison for membership in class " E," accompanied by an admission fee of one dollar only, it was manifestly his duty to examine his books to ascertain whether Mr. Morrison was a member of class " A," in good standing, and to ascertain whether there was any discrepancy in his statements in the two applications. In like manner he should have scrutinized Mr. Morrison's record in classes " A " and " E," when the application for membership in class " D " was received. The secretary represents the company in respect to those matters, and his acts and omissions in the premises are the acts and omissions of the company. With abundant evidence in its own hands to detect the misstatement of age in the application for admission to class " E," and its duty being to examine that evidence, the company cannot now be heard to say that it was ignorant of the misstatement or is prejudiced by it. At the very latest, the company must be charged with notice, when it issued to Mr. Morrison a certificate of membership in class " D," that his age was misstated in his application for membership in class " E."

Knowing that fact, it could avoid payment on the latter certificate in but one way, and that is pointed out in its own by-laws. One of these provides that " in case a certificate of membership has been issued upon an application fraudulent or false in any statement therein, the secretary shall cancel the certificate and return the money." Instead of doing so, the secretary, representing the company, did not cancel the certificate or return the money, but continued to make assessments upon Mr. Morrison as a member of class

" E," all of which assessments Mr. Morrison paid.    Had the
policy been canceled, Mr. Morrison would have been relieved
of the obligation to pay these assessments.    Within the rule
of many cases decided by this court, the course pursued was
an effectual waiver of any right of the company to cancel
the policy.    *Webster v. Phœnix Ins. Co.*, 36 Wis., 67; *Gans
v. St. P. F. & M. Ins. Co.*, 43 Wis., 108; *Joliffe v. M. M.
Ins. Co.*, 39 Wis., 111; *Erdmann v. Mut. Ins. Co.*, 44 Wis.,
376.    The whole subject of waiver is so fully discussed in
the above cases that it is quite unnecessary to discuss it
here.

There is nothing in the charter of the company which re-
stricts membership therein, or in any of its classes, to per-
sons of any particular age.    It was competent for the
company to admit persons as old as Mr. Morrison in class
" E."    Having that power, it could waive in his favor the
restriction of the by-law in that behalf.    In this respect the
case differs from that of *Luthe v. Farmers' M. F. Ins. Co.*,
55 Wis., 543, wherein it was sought to apply the doctrine of
consent and waiver to an act which was prohibited by the
charter of the company, and which the company had no
power to authorize.    It was held that there could be no
waiver of a forfeiture in such a case.    Had the charter of
the present defendant restricted membership therein to per-
sons under fifty years of age, we should have a case like
*Luthe v. Farmers' M. F. Ins. Co.*    Were such the case the
company could not waive the forfeiture.    But we are deal-
ing with no such case.

It seems clear that there was an effectual waiver by the
company of the right to cancel the certificate of Mr. Morri-
son's membership in class " E," because of the misrepre-
sentation of his age, and hence that such misrepresentation
does not defeat the action.

III.  We will now consider the defense that Mr. Morrison
misrepresented the condition of his health in his application

for membership in class "E." The representation was, "I am, so far as I know, in sound health." Dr. Blanchard was the only witness examined on this defense. He testified that Mr. Morrison consulted him professionally about 1873, and four or five times afterwards, before 1881. He says Mr. Morrison complained of indigestion, flatulence, pain in the stomach after meals. The doctor told him he thought "he had a touch of dyspepsia coming on." The difficulty occurred at intervals,— the only one specified being from four to six months,— and seemed to yield readily to treatment. This is the only testimony that Mr. Morrison was suffering from disease, or was not in sound health when he made the representation in question. We think the testimony fails entirely to show that there was any misrepresentation by Mr. Morrison in that behalf. It would be most unreasonable to interpret the term "in sound health," as used in contracts for life insurance, to mean that the insured is absolutely free from all bodily infirmities or from all tendencies to disease. If that were its meaning we apprehend but few persons of middle age could truthfully say they were in sound health. Yet to obtain a life insurance a person must say that, or its equivalent. It is absurd to suppose that Mr. Morrison intended to say in his application that he had no bodily infirmity, and was aware of no tendency to disease, or that the company so understood him. Many cases have been adjudicated which give construction to the term "good health," or "sound health" (which means the same thing), as those terms are used in contracts for life insurance. Some of these cases are referred to in May on Ins., sec. 295. They all seem to sustain the conclusion we have reached, that "a touch of dyspepsia coming on," which manifests itself only after long intervals, which yields readily to medical treatment, and which is not shown to have been (as some of the cases put it) organic and excessive, is not inconsistent with a representation that the person so affected

Morrison vs. The Wisconsin Odd Fellows' Mutual Life Ins. Co.

is in sound health, as that term is employed in contracts for life insurance.

The result of the foregoing views is that the defendant failed entirely to sustain either defense interposed by it, and the evidence established conclusively the plaintiff's right to the verdict which the jury returned under the direction of the court.

IV. Two exceptions to the rulings of the court on objections to testimony remain to be considered:

1. On the trial counsel for plaintiff introduced her deposition, theretofore taken, but read only a portion of it. Counsel for defendant insisted that he should read the whole deposition, but the court did not require him to do so. The answer to this objection is that if counsel for defendant desired to have the remainder of the deposition read to the jury, he was quite at liberty to read it. He did not do so, probably because the deposition contains nothing of any great value to either party. Counsel claims the court ruled erroneously, on the authority of *Juneau Bank v. McSpedon*, 15 Wis., 629. The case does not support the position. A party offered to read a deposition taken at the instance of the opposite party, but was allowed to read only his own cross-examination of the deponent. It was held that he had a right to read the whole deposition, and the judgment for the opposite party was reversed because he was denied that right. The case is of no value on the point here under consideration.

2. The defendant was allowed to give all the testimony offered by it in respect to the condition of Mr. Morrison's health previous to and down to the time he made his applications for membership in class "E." It then attempted to prove the condition of his health after that time until he died, and also the disease of which he died, but the testimony was rejected. It has already been determined that the undisputed testimony establishes conclusively that Mr. Morrison

did not misrepresent the condition of his health in his application for admission to class "E." Hence, the condition of his health later, and the disease of which he died, are immaterial. The testimony was properly rejected.

Some other exceptions are discussed in the brief of the learned counsel for the defendant, but they do not affect the conclusions above stated, and will not be further noticed. The judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.