SARAH A. WATTS v. THE EQUITABLE MUTUAL LIFE ASSOCIATION OF WATERLOO, IOWA, Appellants.

**Insurance Corporations:** CONTRACTS:  *Ultra vires.*  Where an assessment life insurance association insured a person, by reinsurance, without a medical examination as required by its by-laws, 1 it cannot resist payment on the certificate for such reason, as a corporation may waive the provisions of its by-laws.

**SAME:**  *Misconstruction of contract by insurer.*  The fact that an insurer mistakenly deals with its contract as limiting the number of assessments permitted annually to a number—less than is 2 permitted by the laws regulating the insurer, will not sustain the defense of *ultra vires.*

CONSTRUCTIVE NOTICE OF CHARTER TO BENEFICIARY. Where the amount of the assessments provided for in an insurance contract was 3 lower than permitted by the charter of the association, the 4 insured is not charged with constructive notice of the articles of incorporation, so as to preclude a recovery on his contract.

**ESTOPPEL:**  *Executed contract.*  An assessment insurance company entered into a contract of reinsurance, by which the amount of the assessments to be paid by the assured was lower than the rate fixed in its charter. The assured paid all assessments 3 and in every way fulfilled his contract.  *Held,* that as the com- 4 pany had received the benefits from such contract, the matter was within the general scope of its powers, no law was broken or public policy infringed, it would be estopped from denying its liability thereon.

*Appeal from Polk District Court.*—HON.  THOMAS  F. STEVENSON, Judge.

FRIDAY, APRIL 13, 1900.

ACTION in equity upon a certificate of life insurance, in which the plaintiff is named as the beneficiary. There was

a decree for the plaintiff. The defendant appeals.— *Affirmed.*

*Bowen & Brockett* and *Baker & Ball* for appellant.

*F. W. Paschal* for appellee.

Sherwin, J.—On the twenty-eighth day of September, 1892, Dr. Jackson Watts held a certificate of membership in St. Stephen's Brotherhood, a mutual insurance company then doing business in this state. The plaintiff was the beneficiary named in the certificate. The defendant was at that time a corporation engaged in the same business. On the day named a written agreement was entered into by St. Stephen's Brotherhood and the defendant for a consolidation of the two companies. In this agreement the defendant stipulated to enter into a contract with each holder of a brotherhood certificate or policy to assume all liability on said policy; and on the same day a written agreement was entered into by Dr. Jackson Watts and the defendant as follows: "Whereas, Jackson Watts, of Des Moines, Polk county, Iowa, is a holder of certificate No. 332, issued by the St. Stephen's Brotherhood of Des Moines, Iowa, and as said brotherhood has entered into an agreement with the Equitable Mutual Life & Endowment Association of Waterloo, Iowa, whereby it has become consolidated with the said Equitable Mutual Life & Endowment Association, said association assuming liability to such of its members as may enter into a contract therefor with the said Equitable Mutual Life & Endowment Association: It is therefore hereby mutually agreed by and between said holder and the Equitable Mutual Life & Endowment Association that from and after the signature hereunto by said holder, and the return of this to the said association, he shall become a member of said association, and said association assumes all liability under this certificate, said brotherhood being released from such liability. Said holder agrees to pay all future assess-

ments, dues, or quarterly payments to the said Equitable
Mutual Life & Endowment Association at its office in Water-
loo, Iowa, in manner as provided by said certificate, and the
conditions on the back of same; that all assessments shall be
made upon the basis of published scheduled rates and dues of
said brotherhood, and not otherwise. In the event of a claim
hereon, it is agreed that the liability of the Equitable Mutual
Life & Endowment Association, and payment by said asso-
ciation of benefits to beneficiary or holder of a certificate
issued by said brotherhood, shall be governed by the terms of
said certificate, and conditions on the back thereof, and by
the articles of incorporation and by-laws of the Equitable
Mutual Life & Endowment Association, as same now are, or
may be hereafter amended, and not by the articles of incor-
poration and by-laws of the said brotherhood; the same now
being obsolete, by reason of discontinuance of the organiza-
tion. It is also agreed that for all claims based on accidental
injury, whether partial or total disability, said holder shall
be considered a member of the accident department, only, of
the Equitable Mutual Life & Endowment Association, and
for all death claims, a member of the life department; that,
in event of forfeiture of membership from any cause, said
holder agrees that reinstatement shall be had only by compli-
ance with rules and requirements of the Equitable Mutual
Life & Endowment Association." The St. Stephen's
Brotherhood certificate was issued to Watts in October, 1889,
when he was forty-nine years of age, and the rate of assess-
cents per one thousand dollars for a person of forty-nine years
dollars. By the articles of incorporation of the defendant,
the rate of assessment was fixed at one dollar and twelve
cents per one thousand dollars for a person forty-nine years
old, and at the rate of one dollar and twenty-eight cents per
one thousand dollars for a person fifty-two years of age,—
the age of Watts at the time of his contract with defendant.
It is contended by the appellant that the contract of consoli-
dation above referred to, and the contract of reinsurance

with Dr. Watts, are *ultra vires* and void, and that the plaintiff cannot have the relief sought, for these reasons.

As to the contract of reinsurance, it is claimed:

(1)  That no medical examination was made of Watts, as required by defendant's by-laws.  This is true.  But a corporation may waive the provisions of its by-laws, and the defendant must be held to have done so in this case.  *Morrison v. Insurance Co.,* 59 Wis. 162 (18 N. W. Rep. 13); *Weiberg v. Association,* 73 Minn. 297 (76 N. W. Rep. 37).

(2)  That, by the terms of the certificate, Dr. Watts' assessments were limited to twelve per year, which limit was in violation of the law governing defendant in relation thereto.  This contention of the defendant cannot be sustained, for the reason that we do not so construe the certificate.  We think no limit is therein placed upon the number of assessments for death during the year. If the defendant misconstrued its rights under the contract it certainly cannot be heard to say that its contract is *ultra vires* for that reason.

(3)  That the rate of assessment provided for in the certificate adopted by it was lower than required by its articles of incorporation.  This point we will consider later on.

It may be conceded for the purpose of this case that neither the articles of incorporation nor the by-laws of the defendant gave its board of directors any express power or authority to make such a contract of consolidation as it did, or gave it express power to reinsure Watts on the terms it did.  In the reinsurance of Watts, his assessments were fixed by the terms of the certificate issued to him by the St. Stephen's Brotherhood, and were lower than they were fixed by the articles of incorporation of the defendant.  But it is conceded by the appellant that after this contract of reinsurance was made with Dr. Watts, and up to the time of his death, on the sixteenth day of October, 1897, he paid all assessments called for by the defendant, and in every

way complied with the terms of his certificate, and with the requirements thereunder. The assessments paid by him were received by the defendant and were used as other funds of a like nature, and he was in all respects treated as a member of defendant association. Under the conditions above stated, should a court of equity deny the plaintiff recovery on this contract with defendant, or should it be held that the defendent is estopped from denying its liability thereunder? The defendant was a mutual insurance company, organized upon the mutual assessment plan, whose object as stated in its articles of incorporation, was "benevolence and mutual assistance among its members and their families, or designated beneficiaries, by the collection of dues, assessments, or stated payments, and disbursements of the same to said members and beneficiaries, less the cost of maintaining the association." Its general plan and its method of conducting its business were like those of the St. Stephen's Brotherhood. Its expressed object, as seen above, was mutual insurance upon the assessment plan. Hence, in making the contract with Watts, it was within the general scope of its expressed power. Its board of directors, in thus acting, did not violate any law of the state, nor was the act in any way against sound public policy. It has been held by this court, and, indeed, it may be said to be the general rule, that a corporate act in violation of public law, or which is contrary to public policy, is absolutely void, because illegal, and that no private right can be based upon it, for that reason. But this is not such a case, and it may well be questioned whether the act complained of was beyond the power of the corporation. It is said that "acts which, if standing alone, or when engaged in as a business, would be beyond the powers of the corporation, are not necessarily *ultra vires,* when they are merely incidental to, or form part of, an entire transaction, that in its general scope is within the corporate purpose. *Central Ohio Natural Gas & Fuel Co. v. Capital Dairy Co.,* 66 Ohio St. 96 (53 N. E. Rep. 711). If a contract is intended to further the interests

and objects of a corporation, courts are slow to declare it beyond its power. *Railway Co. v. McDonald,* 17 Ind. App. 492 (60 Am. St. Rep. 172, s. c. 46 N. E. Rep. 1022). A large number of the earlier cases wherein the question of *ultra vires* was considered arose in connection with public or *quasi* public corporations, or corporations deriving power from express legislative charter. And much of the strictness of application of the doctrine was on the theory that the interests of the public demanded that corporations should not exceed the power granted. In recent years private corporations have multiplied with great rapidity, and the modern tendency of the courts is to relax this old rigid rule, and to treat them as individuals, and to hold them to the same rules of business morality that govern the individual. And it is said: "The law never sustains the defense of ultra vires out of regard for the corporation. It does so only where the most persuasive considerations of public policy are involved." *Wright v. Hughes,* 119 Ind. 342 (21 N. E. Rep. 907, 12 Am. St. Rep. 412). "A liberal application of the doctrine is generally approved, and it is held that the plea should not, as a general rule, prevail, whether it is interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong." *Whitney Arms Co. v. Barlow,* 63 N. Y. 62 (20 Am. Rep. 504); *Bank v. Dimock,* 24 N. J. Eq. 26; *Carson City Sav. Bank v. Carson City Elevator Co.,* 90 Mich. 550 (51 N. W. Rep. 641, 30 Am. St. Rep. 454; *Lewis v. Association,* 98 Wis. 203 (73 N. W. Rep. 793). Again it is said: "The defense of *ultra vires* is looked upon by the courts with disfavor whenever it is presented for the purpose of avoiding an obligation which the corporation has assumed merely in excess of powers conferred upon it, and not in violation of some express provision of the statute." *Kennedy v. Bank,* 101 Cal. 495 (35 Pac. Rep. 1039, 40 Am. St. Rep. 69).

During the five years intervening between the execution of the contract and his death, Dr. Watts had consci-

entiously performed every obligation he owed the association. Acting through its board of directors, it had received and used the money he paid. Not until after his death was any question raised as to the validity of the contract. But appellant contends that the articles of incorporation were in themselves notice to him that his contract was not in strict accord with their terms, and that he was paying smaller assessments than some of the other members of the association. As a general proposition, this may be conceded to be true. But as said in *Insurance Co. v. McClelland,* 9 Colo. 11 (9 Pac. Rep. 771, 59 Am. Rep. 134), "This constructive notice is of a very vague and shadowy character." It is not claimed that Watts had any actual knowledge of the articles of incorporation, and it is hardly to be presumed that he would keep paying assessments and dues upon a contract that he understood to be of no validity. Again, it is the duty of stockholders or members of a corporation to know what their own officers or managers are doing, and how they are and have been conducting the business of the corporation; and, if Watts is to be charged with notice as claimed, it is but fair that his co-members shall be held to have had full knowledge of the contract with him, and his to have had full knowledge of the contract with him, and his

Without extending this opinion to greater length, in a general discussion of the questions presented, we reach the conclusion, and so hold, that the contract of reinsurance in question was fully executed on the part of Dr. Watts, and that the defendant, having received and accepted from him all dues and assessments he was called upon to pay, cannot now be heard to say that the contract was *ultra vires.* This rule, we believe, is founded upon just and equitable principles, and is sustained by the great weight of modern authority. It surely works no hardship upon the defendant or its members, while a different one would permit corporations to accept all the benefits arising from a contract of this kind and then escape liability because its duly author-

ized officers had, while acting within the general scope of their. authority, in some minor matters exceeded it. See notes in *Re Mutual Guaranty Fire Ins. Co.*, 107 Iowa, 143 (70 Am. St. Rep. 155). The judgment of the district court is AFFIRMED.