GRACE M. TIMBERLAKE & another *vs.* SUPREME COMMANDERY, UNITED ORDER OF THE GOLDEN CROSS OF THE WORLD.

Suffolk.  January 11, 1911. — April 3, 1911.

Present: KNOWLTON, C. J., LORING, BRALEY, SHELDON, & RUGG, JJ.

*Res Judicata. Judgment. Practice, Civil,* Findings of trial judge, Parties. *Corporation, Ultra vires. Estoppel. Fraternal Beneficiary Corporation.*

In a suit in equity in another State, seeking to annul as *ultra vires* a consolidation between a fraternal beneficiary corporation in such other State and a Massachusetts fraternal beneficiary corporation, in which the Massachusetts corporation was named as a defendant but never has been served with process except by publication under the statutes of such other State and never has appeared in the suit, if a decree *pro confesso* is entered against the Massachusetts corporation

in the court of the other State, the rights of the Massachusetts corporation are in no way affected by such decree; and therefore the beneficiaries named in a benefit certificate, issued by the Massachusetts corporation to one of its members, who were not parties to the suit in the other State, are in no way bound by any decision or decree made in that suit, even if they would have been sufficiently represented by the Massachusetts corporation to be bound by such a decree in case that corporation had become subject to or voluntarily had submitted itself to the jurisdiction of the court of the other State.

On an appeal from a judgment entered by order of a judge to whom the case was submitted, without a jury, upon an agreed statement of facts with power to draw inferences from the facts stated, the question before this court is whether, upon the facts stated and any inferences which the trial judge was warranted in drawing therefrom, his findings were warranted.

If a fraternal beneficiary corporation, organized under the laws of another State, undertakes to assume the obligations of a death certificate issued by a Massachusetts fraternal beneficiary corporation, and the member insured by such certificate, accepting the offer of the foreign corporation, joins a body organized as one of its subordinate commanderies and for a period of two years pays assessments to the foreign corporation for the insurance purporting to be given by the terms of his certificate, believing himself to be entitled to all the privileges of a member of the foreign corporation, that corporation, after the death of the member, in an action brought against it by the beneficiaries named in the certificate to enforce its promise, cannot defend the action on the ground that its promise to assume the obligation of the Massachusetts corporation which issued the certificate was *ultra vires* and that the insured to whom the certificate was issued never performed the formal acts required for becoming a member of the foreign corporation.

The beneficiary of a death benefit named in a certificate issued to a member of a fraternal beneficiary corporation incorporated under R. L. c. 119 can sue the corporation in his own name upon the contract made with the deceased member under whom he claims, and in like manner he can sue in his own name a corporation which has assumed toward the plaintiff the obligations of such fraternal beneficiary corporation upon such certificate.

CONTRACT by the daughters of Mary A. Timberlake, late of Boston, as the beneficiaries named in a benefit certificate issued by the Supreme Commandery of the Home Circle, a Massachusetts fraternal beneficiary corporation, the obligations of which upon the certificate issued to Mary A. Timberlake were alleged to have been assumed by the defendant, a fraternal beneficiary corporation organized under the laws of the State of Tennessee. Writ dated October 19, 1908.

In the Superior Court the case was submitted to *Sanderson, J.*, without a jury, upon an agreed statement of facts, which in substance was as follows:

On November 27, 1888, the Supreme Council of the Home Circle admitted Mary A. Timberlake to membership in that

order and issued to her its benefit certificate of insurance, numbered 6533, by which, in consideration of compliance by Mary A. Timberlake with certain laws, rules and regulations adopted to govern the Supreme Council, the Supreme Council of the Home Circle promised to pay to the plaintiffs upon the death of Mary A. Timberlake the sum of $2,000.

After November 27, 1888, and until August 1, 1906, Mary A. Timberlake continued to be a member in good standing of the order of the Home Circle, having paid all dues and assessments required by her to be paid under the laws, rules and regulations of that order, and having otherwise complied with the laws, rules and regulations of the order, and having done all things required by the laws, rules and regulations of the order to keep the certificate in full force and effect.

The defendant is a fraternal beneficiary corporation, organized under the laws of the State of Tennessee. It was on January 1, 1906, and ever since has continued to be, authorized according to law to do business as a fraternal beneficiary corporation within this Commonwealth, to the extent permitted by its charter and by the laws of the Commonwealth.

On or about March 6, 1906, negotiations were begun between the executive committees of the Supreme Council of the Home Circle and of the defendant, looking toward the conclusion of an agreement of the nature hereinafter described.

On or about April 12, 1906, the executive committees of the two orders formulated an agreement to be submitted to the two orders. Among others, this formulated agreement contained the following provisions:

" First. The Golden Cross will accept to full membership in its society all members of the Home Circle in good standing at date of merger, without medical examination."

" Third. Members of the Home Circle thus merged with the Golden Cross will continue to pay their assessment rate in force in the Home Circle at date of merger until the close of December 31, 1906. Thereafter, commencing January 1, 1907, they will pay the rates prescribed for their attained ages by the Golden Cross table of rates."

" Fifth. It is expressly provided that the Golden Cross shall not be liable for the payment of sums named in any certificate

issued by the Home Circle in excess of $2,000 after the member to whom such benefit certificate was issued has reached the age of fifty-five years, as provided by the Constitution and laws of the Home Circle, and provided also that contracts relating to outstanding releases given by members to the Home Circle shall be modified as stipulated in either clause six or twelve of this agreement, as the member may elect.

" In all other respects, the contracts, agreements, and promises, made by and between members of the Home Circle and its Supreme Council, in force at the date when the Home Circle merges with the Golden Cross, shall thereafter be of binding force and effect in the Golden Cross."

" Seventh. The assets of the Supreme Council of the Home Circle will be transferred to and its obligations will be assumed by the Supreme Commandery of the Golden Cross."

" Eleventh. On August 1, 1906, unless found impracticable or refused by one of the societies, the merger shall take effect, and thereafter the assessments of the Home Circle members shall be paid to the Supreme Commandery of the Golden Cross, unless its Executive Committee should, for a limited period, entrust the collection of assessments to the office of the Supreme Secretary, Home Circle."

On or about May 15, 1906, the Supreme Executive Committee of the defendant mailed a printed notice to all the members of the United Order of the Golden Cross to meet to consider the preliminary agreement for transfer or reinsurance of the certificate holders of the Home Circle. On June 21, 1906, a meeting of the members and certificate holders of the Golden Cross was held, in accordance with the terms of the above-mentioned notice, at which meeting it was voted, by vote of more than two-thirds of the certificate holders present or represented by lawful proxy, to accept the agreement of transfer or reinsurance of certificate holders of the Home Circle to or in the United Order of the Golden Cross. A certified copy of that agreement was filed with the Insurance Commissioner of this Commonwealth on July 23, 1906.

On June 6, 1906, due notice having been given, a meeting was held of the certificate holders of the Supreme Council of the Home Circle, of which Mary A. Timberlake was one, and

the agreement was accepted by a unanimous vote of the members present and voting.

On May 21, 1907, the following resolution was adopted by the Supreme Commandery of the United Order of the Golden Cross of the World by a vote of forty-three to four:

"Be it resolved: By the Supreme Commandery of the United Order of the Golden Cross of the World, in legislative session assembled at the Exposition Grounds, Jamestown, Virginia, May 21, 1907. That the action of the Supreme Commandery in executive session at Knoxville, Tennessee, on May 15, 1906, and of the general meeting of the members and certificate holders of this order taken and had at Berkeley Hall, Boston, Mass., on Thursday, June 21, 1906, whereby they ratified and confirmed and adopted the contract of April 12, 1906, made between the Executive Committees of the Supreme Council of the Home Circle and the Supreme Commandery of the United Order of the Golden Cross of the World providing for a merger of the two orders by the same is hereby in all things approved, ratified and confirmed."

On or about August 1, 1906, the subordinate councils of the Home Circle, including the council of which Mary A. Timberlake was a member, were organized as subordinate commanderies of the Golden Cross, with the same subordinate officers in charge thereof. Assessments were paid by the members, including Mary A. Timberlake, of these subordinate councils or commanderies to the proper subordinate officers of the councils or commanderies, and were paid over by them to the supreme treasurer of the United Order of the Golden Cross. The money so paid over to the supreme treasurer of the Golden Cross was not mingled with the assessments received from the Golden Cross Commanderies, was kept separate and was used solely for the payment of death benefits accruing on certificates originally issued by the Home Circle. Mary A. Timberlake, after August 1, 1906, and up to the time of her death, paid assessments to the subordinate officer of the council or commandery of which she was and had been a member.

After January 1, 1907, and until the date of her death, Mary A. Timberlake paid all such assessments as were demanded by notices sent from the office of the supreme secretary of the de-

fendant order, and such assessments were paid in accordance with the table of rates adopted by the defendant.

Mary A. Timberlake died on July 14, 1908, having paid all assessments which, up to that time, properly ought to have been paid, and having done all things required of her to be done in order to keep the benefit certificate and her rights, if any, or those of the plaintiffs, against the defendant, and the plaintiffs have done all things by them required to be done in order to keep the benefit certificate and their rights, if any, against the defendant. Due and sufficient proofs of her death were mailed to the officers of her subordinate council or commandery, and forwarded to the supreme secretary of the defendant order.

On or about November 6, 1906, Charles Knapp and others, members of the United Order of the Golden Cross of the World, filed a bill in equity against the Supreme Commandery of the United Order of the Golden Cross of the World in the Chancery Court of Knox County, Tennessee. The Chancery Court of Knox County, Tennessee, is a court of equity having jurisdiction of the United Order of the Golden Cross in that cause and having power to issue valid and binding decrees such as were issued in that cause. Due service of process was made on the defendant, the United Order of the Golden Cross, which appeared and defended the cause. The Supreme Council of the Home Circle was named as a party defendant in the bill and judgment was entered against it *pro confesso* by order of the Chancery Court but service was made upon it only by publication in accordance with the provisions of the statutes of the State of Tennessee. The Home Circle did not appear in the Chancery Court until its receiver intervened as hereinafter set forth.

The object of the bill in equity was to have the above mentioned agreement between the two fraternal orders declared *ultra vires*, null and void.

On November 13, 1906, an injunction as prayed for in the bill was issued against the defendant by the Chancery Court of Knox County, Tennessee. On November 19, 1906, an order modifying the injunction was issued by that court. On December 18, 1906, the defendant filed an answer in that case. The defendant was represented by able counsel, members of the bar of Tennessee, and the case was defended and tried in good faith

through all its stages by the Supreme Commandery of the United Order of the Golden Cross.

On July 6, 1907, an order was issued in the case, modifying the injunction so as to allow the defendant to pay death claims of members of the Home Circle out of funds collected from Home Circle members in the manner set forth in the order, and on April 14, 1908, a final decree was entered, sustaining the allegations in the bill, ordering an accounting and a winding up of the business done by the attempted merger, and forbidding by a perpetual injunction the merger of the two fraternal orders. The case was taken to the Supreme Court of Chancery of the State of Tennessee, on appeal of the Supreme Commandery of the United Order of the Golden Cross, and the appeal was argued fully and in good faith by counsel for the United Order of the Golden Cross, the defendant.  On or about December 6, 1908, the Supreme Court of Tennessee rendered an opinion, and a decree was entered in the Supreme Court of the State of Tennessee, sustaining the findings and decrees of the Chancery Court of Knox County.

The defendant has in all respects observed and carried out the orders and decrees of the courts of Tennessee, made and entered in the case of Charles Knapp *et al.* against the defendant.  All the funds received by the defendant order from persons who were former members of the Home Circle, and who were to be made members of the United Order of the Golden Cross by the attempted merger or consolidation, have been paid out and used in good faith in paying death claims of Home Circle members, and none of the funds received by the defendant from the former Home Circle members have been mingled with the benefit fund or other funds of the United Order of the Golden Cross.  All the funds received from former Home Circle members since the equity suit was brought by Charles Knapp and others against the defendant have been paid out and used under the directions and orders of the Chancery Court of Knox County, Tennessee.

The matter of an accounting between the two fraternal orders is still pending before the Chancery Court of Knox County, Tennessee.

If competent and material, it was agreed that on or about

December 18, 1908, a bill in equity was brought by the Attorney General of the Commonwealth of Massachusetts in the Supreme Judicial Court of Suffolk County, Massachusetts, asking for a winding up of the business of the Home Circle and the appointment of a receiver, and on December 23, 1908, Robert W. Sawyer, Jr., was appointed receiver of the Home Circle by the Supreme Judicial Court, and the receiver has been made a party to the original suit of Charles Knapp *et al.* against the United Order of the Golden Cross of the World and the Home Circle, in the Chancery Court of Knox County, Tennessee, and the receiver has intervened in that suit in the matter of the accounting between the two orders.

The defendant and its officers, agents and counsel, and the officers, agents and members of the Home Circle have been in the exercise of good faith throughout the attempted merger and in all proceedings subsequent thereto.

It was agreed that the constitution, charter and general laws of the United Order of the Golden Cross as revised at the session of the Supreme Commandery held at Providence, Rhode Island, in May, 1905, might be regarded as a part of the facts agreed, and so far as competent and material, might be referred to by counsel for either party.

It also was agreed that all of the copies of papers mentioned might be regarded as evidence, and as a part of the agreed statement.

It further was agreed that the court might draw all proper inferences from the facts above stated.

The judge found for the plaintiffs in the sum of $2,270; and made an order for judgment in that amount. From the judgment entered in pursuance of this order the defendant appealed.

*W. H. Powers,* (*W. Powers* with him,) for the defendant.

*H. L. Brown,* (*E. Field* with him,) for the plaintiffs.

SHELDON, J.    The plaintiffs were not parties or privies to the action brought by Knapp and others against the defendant in Tennessee, and are in no way bound by the decision made therein. *Rothrock* v. *Dwelling-House Ins. Co.* 161 Mass. 423. *Pennoyer* v. *Neff,* 95 U. S. 714. We need not consider whether, if the Supreme Order of the Home Circle (hereinafter called simply the Home Circle) had become subject to the jurisdiction

of the Tennessee courts either by having been properly served upon or by having voluntarily entered its appearance in the case, it could be held that Mrs. Timberlake, under whom the plaintiffs claim, was sufficiently represented by that corporation, of which she had been a member. This would require some extension of the doctrine declared in such cases as *Francis* v. *Hazlett,* 192 Mass. 137, and *Howarth* v. *Lombard,* 175 Mass. 570, in which it was held that under the circumstances there stated the domestic stockholders of an insolvent foreign corporation were bound by the action of the foreign courts in suits to which the corporation was a party. Here the Home Circle, though named as a party defendant in the Tennessee suit, never was served personally with process and did not appear, so that its rights were in no way affected by the decision rendered. Of course it could not be, as it has not been, contended that the subsequent intervention of its receiver in the matter of the accounting had the effect of a previous appearance by the Home Circle itself.

But the decision rendered in Tennessee and affirmed in the highest court of that State is fully set out in the agreed facts upon which the case at bar was heard. That statement of facts agreed was not a case stated, strictly so called, but it was stipulated that the court might draw all proper inferences from the facts agreed. This decision was the only evidence before the court as to the law of Tennessee (R. L. c. 175, § 76), and no other inference could be drawn from it than that by the law of Tennessee the defendant had not the power to unite or consolidate with the Home Circle, and that, as to the defendant at any rate, the attempted consolidation was *ultra vires* and void. But this consideration is not necessarily fatal to the maintenance of the present action.

The agreed facts, as we have seen, constituted merely the evidence upon which the case was tried. *Cunningham* v. *Connecticut Fire Ins. Co.* 200 Mass. 333, 335, and cases cited. Accordingly the question before us is whether, upon those facts and any inferences which the judge at the trial was warranted in drawing therefrom, his finding for the plaintiff can be sustained. *Vahey* v. *Bigelow, ante,* 89.

There is no dispute that the defendant attempted to assume the contract of insurance which had existed between Mrs. Tim-

berlake and the Home Circle. She became a member of a commandery which was organized as one of the defendant's subordinate commanderies or lodges. She was allowed and enjoyed all the privileges of membership in the defendant's organization, and was subjected to and bore all the burdens incident thereto. Her right to have a death benefit paid to her beneficiaries as stipulated in her certificate from the Home Circle was recognized by the defendant. Assessments were paid by her to the proper officers of her commandery, and were received from them by the defendant. It properly could be inferred, if indeed any other inference was possible, that these assessments were levied upon her by the defendant itself. This continued for nearly two years, during which time her payments, so made to and received by the defendant, amounted to a considerable sum, mainly if not wholly paid for the very insurance or death benefit which is now sought to be recovered. How the defendant kept these payments and what application it made of them does not appear to have been known to her, nor is she chargeable with any laches or neglect for having failed to inquire. The facts that have been stated must be construed with reference to the relative positions of the parties. What were these positions?

She had been a member of a fraternal beneficiary association incorporated under R. L. c. 119, and held a certificate therefrom by which it was promised that upon her death there should be paid to her beneficiaries, the present plaintiffs, a certain sum of money, provided among other things that she should duly pay such assessments as should be properly levied upon her. The defendant was a Tennessee corporation, organized for purposes substantially similar to those of the corporation of which she was a member, one of whose principal objects was to make contracts of fraternal insurance with its members. In substance, by its negotiations and final attempted agreement with the Home Circle, and by the notices which it could be found came to her with the consent and by the authority of the defendant, the defendant invited her to join its membership, to pay to it the assessments which it should thereafter levy for her insurance, and to comply as one of its members with its proper and lawful requirements; and in consideration thereof it promised to pay the amount named in her certificate to her benefici-

aries, subject to the contingencies therein stipulated for.  If the judge found, as manifestly he could find, that these facts were established, this was none the less an offer to her individually that it was made also to many other persons in the same situation as herself.  It could be found that she accepted this offer by joining the defendant's commandery and paying regularly and promptly to the defendant through subordinate officers the requisite assessments in accordance with its table of rates.  It is evident that upon these facts the judge could find that the contract relied upon by the plaintiffs was made between the defendant and Mrs. Timberlake.

But it is contended that this contract was beyond the power of the defendant to make, and so that this action thereon cannot be maintained.

It is said that Mrs. Timberlake could not have become a member of the defendant's organization, and so that no valid contract of insurance could have been made between her and the defendant, because the formal prerequisites to her admission as a member and to the making of a contract of insurance were not complied with.  Most of these requirements are stated in the defendant's Law XI.  She made no application for membership.  No ballot was taken upon the question of her admission.  She paid no admission fee, and did not present a recommendation from two members of the order.  She underwent no medical examination, and her application was not approved by the defendant's supreme medical director.

It is to be observed that the question is not whether the attempted consolidation of the defendant and the Home Circle was void.  That may be assumed.  *Knapp* v. *Golden Cross*, 121 Tenn. 212.  *New Orleans, Jackson, & Great Northern Railroad* v. *Harris*, 27 Miss. 517.  *Bankers' Union* v. *Crawford*, 67 Kans. 449.  *Whaley* v. *Bankers' Union*, 39 Tex. App. 385.  *Pearce* v. *Madison & Indianapolis Railroad*, 21 How. 441.  The present question is whether the corporation itself, having made such a contract as this, knowing it to have been made without compliance with the provisions of its own regulations, and having received the full consideration for which it stipulated, can afterwards avoid its contract as *ultra vires* by reason of such noncompliance.

The general rule governing such cases was stated in *Davis* v. *Old Colony Railroad*, 131 Mass. 258 : " A corporation has power to do such business only as it is authorized by its act of incorporation to do, and no other.   It is not held out by the government, nor by the stockholders, as authorized to make contracts which are beyond the purposes and scope of its charter. . . . If it makes a contract manifestly beyond the powers conferred by its charter, and therefore unlawful, a court of chancery, on the application of a stockholder, will restrain the corporation from carrying out the contract ; and a court of common law will sustain no action on the contract against the corporation. . . . There is a clear distinction, as was pointed out by Mr. Justice Campbell in *Zabriskie* v. *Cleveland, Columbus, & Cincinnati Railroad*, 23 How. 381, 398, by Mr. Justice Hoar in *Monument National Bank* v. *Globe Works*, 101 Mass. 57, 58, and by Lord Chancellor Cairns and Lord Hatherley in *Ashbury Railway Carriage & Iron Co.* v. *Riche*, L. R. 7 H. L. 653, 668, 684, between the exercise of a power not conferred upon it, varying from the objects of its creation as declared in the law of its organization, of which all persons dealing with it are bound to take notice ; and the abuse of a general power, or the failure to comply with prescribed formalities or regulations, in a particular instance, when such abuse or failure is not known to the other contracting party." The first of these propositions is relied upon by the defendant. Its correctness is not doubted. It is amply supported by adjudged cases. There is no occasion to cite more than a few of these.   *Attorney General* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 194, 197.   *Stevens* v. *Rutland & Burlington Railroad*, 29 Vt. 545.   *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 636. *Bank of Augusta* v. *Earle*, 13 Pet. 519.   *Central Transportation Co.* v. *Pullman's Palace Car Co.* 139 U. S. 24.   But the second proposition, the rightful limitation of the application of the general principle, is no less firmly established both in sound reason and authority.   *Slater Woollen Co.* v. *Lamb*, 143 Mass. 420. *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177, 179.   *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 404.   *J. G. Brill Co.* v. *Norton & Taunton Street Railway*, 189 Mass. 431, 437.   *Bissell* v. *Michigan Southern & Northern Indiana Railroad*, 22 N. Y. 258, 289.   *East St. Louis* v. *East St.*

*Louis Gas Light & Coke Co.* 98 Ill. 415. *Bradley* v. *Ballard,* 55 Ill. 413. *State Board of Agriculture* v. *Citizens Street Railway,* 47 Ind. 407, cited and followed in *Hitchcock* v. *Galveston,* 96 U. S. 341. *Citizens State Bank* v. *Hawkins,* 71 Fed. Rep. 369.

The principle last stated is decisive here. The contract with Mrs. Timberlake was not beyond the general scope of the authority given to the defendant by its charter and the law of its organization. It was a contract of the very kind which the defendant was created for the purpose of making. There was simply a failure to comply with certain regulations of its own framing, never communicated to her. No statute of Tennessee or judicial decision made in that State forbidding such a contract was in evidence; and no such statute or decision has been called to our attention. Under these circumstances the defendant has not the right to take the benefits of the contract by receiving Mrs. Timberlake's money as assessments upon a valid contract of insurance, and then to avoid the contract by reason of its failure to enforce its own private regulations unknown to her.

If it were necessary to consider that question, there is authority for saying that whatever might be the limits of the power of any one or more of its officers (*Burbank* v. *Boston Police Relief Association,* 144 Mass. 434; *McCoy* v. *Roman Catholic Mutual Ins. Co.* 152 Mass. 272; *Kocher* v. *Catholic Benevolent Legion,* 36 Vroom, 649), the corporation itself could waive the compliance by an intended member with any of its requirements not prescribed by its charter or the law of the State, for his admission to membership and the conclusion of a binding contract of insurance. *Watts* v. *Equitable Mutual Life Association,* 111 Iowa, 90. *Morrison* v. *Odd Fellows Mutual Life Ins. Co.* 59 Wis. 162. *Wiberg* v. *Minnesota Scandinavian Relief Association,* 73 Minn. 297.

The defendant did not mingle the money received from Mrs. Timberlake and other former members of the Home Circle with its other funds, but used them solely for the payment of death benefits upon certificates formerly issued by the Home Circle. As already intimated, we do not regard this circumstance as material. She neither knew nor was bound to know anything of what the defendant did with her money. It applied that money

as it chose, or as it found itself compelled by the court of Tennessee to do. But her rights were affected neither by the defendant's voluntary action nor by the orders of the Tennessee court made in a suit to which she was neither party nor privy and of which so far as appears she had no knowledge.

Some decisions have been made in the courts of other States under circumstances somewhat similar to those now before us. The defense here set up prevailed, as according to our reasoning it should have prevailed, in cases in which it was not shown that an intended member had paid any money to the defendant under the new contract of insurance, or that he had in any other respect changed his position in reliance upon that contract to the gain of the defendant or to his own detriment. *Bankers' Union* v. *Crawford*, 67 Kans. 449. *Twiss* v. *Guaranty Life Association*, 87 Iowa, 733. *Whaley* v. *Bankers' Union*, 39 Tex. App. 385. Where, however, as in the case at bar, it appeared that assessments or premiums had been regularly paid under the new contract, we have found no case in which this defense has been sustained. See the elaborate opinion in *Cathcart* v. *Equitable Mutual Life Association*, 111 Iowa, 471. The same fundamental principle was involved, though under different circumstances, in *Bloomington Mutual Benefit Association* v. *Blue*, 120 Ill. 121, 128, and *Wuerfler* v. *Grand Grove of Wisconsin of the Order of Druids*, 116 Wis. 19.

These plaintiffs may sue in their own names upon the defendant's contract with Mrs. Timberlake, of which they were expressly made the beneficiaries. *Dean* v. *American Legion of Honor*, 156 Mass. 435.

No question is raised before us as to the amount which the plaintiffs are entitled to receive.

The judgment for the plaintiffs must be affirmed.

*So ordered.*